# Coleman *versus* The Columbia Oil Company.

1. A company having bought in shares of its own capital stock, afterwards divided them among the then stockholders *pro rata;* a stockholder who had, between the time of the purchase and the time of the distribution, assigned a part of his stock, sued the company for a *pro rata* of the shares on the basis of the number held by him at the time of the purchase. *Held,* that his action is an affirmance of the purchase, and he cannot allege that the company's funds were misapplied; as to him, the distribution was an equitable one.

2. Although the employment of corporate funds, to speculate in the stock of the company to which the funds belong, is not a practice to be encouraged, the plaintiff was not in a position to censure the practice. As to him the purchase was valid and fair.

ERROR to the Court of Common Pleas of *Allegheny county.*

The Columbia Oil Company was incorporated by the legislature, with a capital stock of 10,000 shares.

April 9th 1863, the company purchased 400 shares of its stock from Charlotte Wagefarth, at which time Coleman was the owner of 600 shares. Prior to October 1st 1863, he had transferred 500 shares, leaving 100 shares still owned by him. January 13th 1864, by resolutions of the stockholders the 400 shares purchased from Wagefarth were divided *pro rata* among the stockholders, except 8 shares, which were sold at $83 per share, and the proceeds divided *pro rata.* Under this arrangement the division to the plaintiff was made upon the basis of the 100 shares owned by him at the time of the division. The plaintiff demanded that his share of the stock purchased by the company should be determined upon the basis of the 600 shares owned by him at the time of the *purchase,* and refused to receive the dividends upon the

[Coleman *v.* The Columbia Oil Co.]

additional shares, or to recognise the act of the company in making the purchase. .

In July 1864, the original shares of stock were divided into five shares each.

Upon the trial, the jury were instructed to return a verdict for the plaintiff, for the market value of his *pro rata* share of the 400 shares of stock, based upon his being entitled to a division upon the 600 shares which he owned at the time the stock was purchased from Wagefarth. The question whether the plaintiff was entitled, under the evidence, to recover upon the basis of the amount of stock owned by him at the time of the purchase, was reserved for further consideration by the court.

Upon this question the court (Stowe, A. J.) delivered the following opinion :—

" If the defendant has a legal right to purchase the stock in question under its charter, it is clear that the stock became, like any other property properly acquired, the general property of the corporation, and continues so till set aside for the individual stockholders by the proper authority, and plaintiff cannot recover ; and even if the company had not a right to acquire this stock in the manner it did, plaintiff cannot recover unless the purchase, instead of vesting the stock in the company, as general corporate funds, vested the right to it in the individual stockholders in proportion to the stock held by them at the time, the corporation being merely trustee for them individually.

" Without undertaking to base my opinion in this case upon the assumption, I am of opinion that a corporation, under its general corporate powers, may purchase its own stock, when the act is done in good faith for the benefit of the corporation. But even granting such not to be the case, and admitting that the purchase of the 400 shares of stock in this case was not authorized by law, I cannot see how the stock purchased can bear any other relation to the stockholders or the corporation, than did the money with which it was purchased. That was corporate funds, held in trust for the stockholders in their corporate capacity, and if it was misused by obtaining with it other property, it seems to me the property purchased must be treated as held under the same trust. If this view is correct, the plaintiff acquired no individual right to the stock claimed by him by virtue of its purchase by defendant, and therefore is not entitled to maintain this action.

" Let judgment be entered upon the question of law reserved for defendant, *non obstante veredicto,* upon payment of verdict fee."

Assignment of error : The court erred in entering judgment for the defendant on the reserved question.

*Hamilton & Acheson,* for plaintiff in error, contended that the purchase of the stock was a misapplication of the funds of the

company, and referred to In re London and Birmingham Railroad Co., Ex parte Carpentier's Executors, 13 L. & E. Rep. 201; Wilson *v.* The Bank, 5 Casey 536; Reese *v.* The Bank, 7 Casey 78; Kimmel *v.* Stoner *et al.*, 6 Harris 155.

The charter having declared that the stock of this company should be divided into a certain number of shares, to wit, 10,000, it was not competent for the company to change or diminish the number: Salem Mill Dam Co. *v.* Ropes, 6 Pick. 23; Oldtown & Lincoln Railroad Co. *v.* Vegie, 29 Me. 571; Redfield on Railways, p. 37, sec. 2.

*Jas. Leech*, for defendant in error.—The power to buy in its own stock, fairly and for the common benefit, is exercised by every class of private corporations. It was conceded, or assumed, to exist in a turnpike road company, in Kimmell *v.* Stoner, 6 Harris 156, and if in that, why not in an oil company?

The opinion of the court was delivered, November 2d 1865, by

WOODWARD, C. J.—The plaintiff owned 600 shares of the capital stock of the company, when the company, on the 9th of April 1863, by regular corporate action, purchased 400 shares of Mrs. Wagefarth. The company continued to hold these 400 shares until the 13th January 1864, when, by formal resolution of the stockholders, they were divided among the then stockholders *pro rata*, upon the basis of the shares then held by the stockholders respectively. Between the time of the purchase and the time of the distribution of the 400 shares, the plaintiff had sold and assigned 500 shares of his stock, so that at the distribution he held but 100 shares. He claims that he was entitled to a *pro rata* of the 400 shares purchased of Mrs. Wagefarth upon the basis of the number of shares owned by him when the purchase was made, and not upon the basis of the shares owned by him when the division was made; and to enforce this claim he brought suit against the company.

The learned counsel of the plaintiff admit that a corporation may, from necessity, take its own stock in pledge or payment, as a lawful exercise of the corporate franchise, but they deny that the purchase in question was the exercise of a corporate franchise, or was justifiable upon any principle of necessity, and they maintain that it was the voluntary and gratuitous act of the directors, wholly outside of their official powers and duties.

Suppose this be fully admitted, can it be doubted that the plaintiff's action is in affirmance of the purchase? If he meant to disaffirm it, he should have sought an injunction against the company to restrain the purchase, or to cancel it if done before he had knowledge of it, or if he would bring an action at law, he should have declared for his share of the funds which he com-

plains were misapplied in buying the 400 shares.   Instead, however, of disaffirming the purchase in any manner, he affirms it, and claims his full share of the speculation.   And he claims it against the *company*, and not against the directors merely who misapplied the funds, affirming thereby that it was a corporate act, and that, as one of the corporators, it enured to his benefit.   This is the circumstance which prevents us from considering the transaction as a breach of trust.   Whatever we might think of it in a different proceeding, we can, in this action, regard it in no other light than a valid corporate act.   And for this reason the case of The London and Birmingham Railway Company v. Carpentier's Executors, 13 L. & E. R. 201, has no application, no more than the other cases cited to prove that the *charter* having divided the stock into a certain number of shares, it was not competent for the company to change or diminish the number.   If the company have violated the law of its being, or been guilty of a breach of trust, let appropriate proceedings be instituted against it, but let us not be asked to convict it of these high misdemeanors before they are alleged in pleading, and that in an action too, which affirms, approves, and claims the fruits of the very act we are asked in argument to condemn.

The employment of corporate funds to speculate in the stock of the company to which the funds belong, is not a practice to be encouraged; but the present plaintiff is not in position to censure the practice.   As to him, we must regard the purchase as valid and fair; and all we have to decide is how far it enures to his benefit.

We think the court below gave satisfactory reasons for the judgment they entered.   When a company buys in shares of its outstanding stock, it enriches the shares of every holder; for, whether the purchased shares be sunk, or sold at a profit, or distributed *pro rata* among the stockholders, the chance for an increase of dividend, or of shares, enhances the value of each existing share—enhanced the value of the 600 shares held by the plaintiff.   When he sold 500 shares of his stock, he got, or he ought to have got, the benefit of this enhancement, and he ought surely to let his vendees, who paid the market price, take all they purchased; not only the shares themselves, but also the incidental right of those shares to participate in the distribution of the Wagefarth stock.

As well might he dispute the right of his vendees to receive dividends, as to receive a *pro rata* distribution upon the stock they purchased of him.   As well might he deny their right to the stock itself, as to deny them the incidental advantages of the stock.

The judgment is affirmed.