CARL F. A. KOEHLER v. WALTER BUHL ET AL.

*Contract of employment—Discharge for incompetency—Evidence— Tender.*

1. A contract by which an employer agreed to pay an employé, who entered his service on June 2, 1890, $35 per week, and in January, 1891, $100 as extra pay, and, furthermore, for the year 1891 said salary and 5 per cent. of the net profits of the department of the business in which he was employed, is held to have covered all of the year 1891.

2. Where an employé agrees that his work shall be done to the satisfaction of his employer, a letter received from a customer for whom the employé has done a piece of work is not admissible to show the employer's dissatisfaction, or that the work was not well done, in the absence of proof that a conversation occurred between the employer and employé about it.

3. Evidence that the same fur cutters were employed while a furrier was working for the common employer as before, and that before his employment the work had been good, has no tendency to show that the furrier was an incompetent workman.

4. A tender in bank notes is good, unless objected to on the ground that they are not legal tender; citing *Fosdick v. Van Husan,*

21 Mich. 576; *Lacy v. Wilson*, 24 Id. 479; *Beebe v. Knapp*, 28 Id. 70.

5. An impeaching question which fails to include the time and place of an alleged conversation, or the circumstances under which it took place, is insufficient, it not satisfactorily appearing that the witness identified the occasion.

6. Where a person contracts to do work to the satisfaction of his employer, the employer is the judge, and the question of the reasonableness of his judgment is not for the jury.

7. The employer is not obliged in such a case to take advantage of the first infraction of the contract.

Error to Wayne. (Gartner, J.) Argued January 13, 1893. Decided January 20, 1893.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Corliss, Andrus & Leete,* for appellants.

*M. P. McGregor,* for plaintiff.

HOOKER, C. J. The plaintiff, a furrier, entered defendants' employ on June 2, 1890, under the following written contract, viz.:

"Agreement between Walter Buhl & Co. and Carl Koehler.

"Walter Buhl & Co. agree to pay Carl Koehler thirty-five dollars ($35.00) per week, and in January, 1891, the sum of one hundred dollars ($100) as extra pay; and, furthermore, for the year 1891 they agree to pay to him the above-mentioned salary and five per cent. of the net profits of the fur department of the business.

"In consideration of the above salary and bonus, Carl Koehler agrees to do the best work he can for the firm, and agrees that such work and business as may be intrusted to him shall be done to the satisfaction of said firm.

"WALTER BUHL & CO.<br>"CARL KOEHLER."

Koehler was discharged on February 28, 1891, and subsequently brought *assumpsit,* claiming the full amount that he was to receive according to the terms of the contract.

Upon the trial the plaintiff was asked:

"How much did your salary come to, at $35 a week, from the time you were discharged up to the 1st of January, 1892?"

This question was objected to, upon the ground that the employment was for one year only. The plain import of the language used is that the contract was intended to cover all of the year 1891, and the testimony was properly admitted. This disposes of the first and sixth assignments of error, the court having charged the jury that "the contract of employment provided for the entire year 1891."

Upon the trial the defendants claimed that the plaintiff was not a competent workman, and that they found fault with his work, and upon his cross-examination the plaintiff was asked concerning a piece of work that he did for one Henry Clothier. He admitted seeing the work in the factory after its return, and also saw the letter from Clothier to the house, but denied that anything was said to him about the work being unsatisfactory. The letter was then offered in evidence by defendants' counsel, but was excluded. The letter alone was not admissible to show defendants' dissatisfaction, nor was it competent evidence that the work was not well done. In the absence of proof that a conversation occurred about it, no error was committed in excluding it.

By way of defense, the defendants sought to show that they employed the same fur cutters while the plaintiff was with them as before, and that before his employment the work had been good. This evidence was properly excluded. It did not tend to show plaintiff's incompetency.

Evidence was offered on the part of the defendants to show that the sum of $100 was tendered to the plaintiff for the January bonus, mentioned in the contract. The witness said:

"I offered him $100. It was in currency,—paper money. We said, 'Here is $100, which we claim to be due you,' or words to that effect. He said he would not take it. I have no recollection of a receipt being demanded."

"Question by Court: Was this money in greenbacks or national bank notes?

"A. I could not state.

"Court: Then it is not necessary to pursue it any further. (Exception by defendants' counsel.)"

This evidence should have been admitted, and the question should have been left to the jury. It is well settled that a tender in bank notes is good, unless objected to on the ground that they are not legal tender. Fosdick v. Van Husan, 21 Mich. 576; Beebe v. Knapp, 28 Id. 70; Lacy v. Wilson, 24 Id. 479.

Edward Schneider, a witness for the plaintiff, was asked, on cross-examination, if he did not say to Mr. Deyo "that Mr. Koehler's system was not half learned." The following colloquy ensued:

"A. No, sir; I never said that.

"Q. Did you say that his system was defective?

"A. No, sir.

"Q. Did you not say that the system was not such as to make a perfect fitting garment?

"A. No, sir. I never said that. I once passed a remark to Mr. Deyo about one seal, but it had nothing to do with fitting, and it is simply a matter of—"

Later the witness Deyo was called, and asked the following question, viz.:

"Did Mr. Schneider state to you, shortly after Mr. Koehler was discharged, that Mr. Koehler's system was not half learned?"

The objection to this question was properly sustained, the foundation being insufficient. Neither time, place, nor circumstance was included in the original question, and it does not satisfactorily appear that the witness Schneider identified the occasion.

The 8th, 9th, and 10th assignments of error are based on the charge, which was as follows:

8. "Of·course, when a contract states 'to the satisfaction of said firm,' the meaning of that is that they cannot act captiously or arbitrarily about it; and, if they did discharge him, it does not depend entirely upon what they may have thought, or what their judgment of the capacities of Mr. Koehler may have been, because they would have to act reasonably."

9. "The question of fact for you to determine will be as to whether Mr. Koehler was a competent and fit person for the employment of fitter and designer."

10. "If Koehler was a fit and competent person, he was then, under the terms of his contract, entitled to his full compensation during the year 1891, and until December 31, 1891."

The effect of these instructions was to give the jury to understand that, if the plaintiff was a competent workman, he had a right to recover, whether he did good work or not, and this in the face of his undertaking to do not only good work, but work that should be satisfactory to his employers. It is settled law that, where a person contracts to do work to the satisfaction of his employer, the employer is the judge, and the question of the reasonableness of his judgment is not a question for the jury.

The jury was called in by the judge for instructions twice, and, while the first interview shows nothing that necessarily injured the defendants' case, the instructions on the second occasion were erroneous. The following instructions were given:

"You want to remember. the fact that in June, 1890, the plaintiff was employed by.the defendants in this case. He remained in the employment of the defendants for June, for July, for August, for September, for October, for November, for December, for January, and for February, during all of which time there is no evidence in this case that any fault was found with the plaintiff in this case. He remained in the employment of the defendants in this case for nine months before any fault was found with him;

and in the latter part of February, according to the undisputed testimony in this case, he was peremptorily discharged by the defendants in this case."

The assumption that the defendants did not find fault is not supported by the record, the testimony of the plaintiff showing the contrary, to say nothing of the defendants' proofs.

Again, the court instructed the jury that—

"A person always has to act within a reasonable time. As to what constitutes a reasonable time is sometimes a question of fact and sometimes a question of law. Now, if you employ a man who enters your employment, and you are to decide upon certain questions, you are obliged, under the law, to act within a reasonable time, and if the defendants in this case recognized the fact, or were aware of the fact, that this man was an incompetent man at any time within the nine months, their business was to make it known to the plaintiff in the case."

The application of such a rule to this case would put a premium on hard dealing, by requiring an employer to take advantage of the first infraction of the contract. Anything forgiven might fasten the contract upon him, and make the incompetent workman secure in his employment.

It follows that the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.