JOHN P. NELSON, ADMINISTRATOR, ETC., v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Negligence—Causing death of wife—Evidence—Damages.*

1. In a suit by a husband to recover for negligently causing the death of his wife, opinion evidence of the value of her services is admissible; citing *Rajnowski v. Railroad Co.*, 74 Mich. 20, 27.

2. There can be no compensation in such a case for grief, loss of companionship, wounded feelings, or suffering, either of the deceased or the beneficiary.

3. The mortality tables found in How. Stat. § 4245, were intro-

duced in evidence by the plaintiff. And it is held that they were conclusive as to the life expectancy of the decedent, in the absence of evidence to show that her probability of life. was greater or less than that shown by said tables.

4. A verdict for $7,000 in favor of a husband for negligently causing the death of his wife, who was of the age of 56 years,. is legally excessive, where the only tangible evidence of the value of his pecuniary loss is his board and that of his two. minor children.

Error to Monroe. (Kinne, J.)    Argued November 23,. 1894. Decided April 16, 1895.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. C. Angell,* for appellant.

*C. A. Golden* and *Scribner & Hurd,* for plaintiff.

GRANT, J. The accident which resulted in the death of Mrs. Nelson occurred in Ohio, and this suit is brought under the Ohio statute, which is similar to that of Michigan, found in How. Stat. §§ 8313, 8314. The negligence of the defendant is · conceded. The only questions arise upon the measure of damages. A statement of the evidence is essential to a proper understanding of the charge. There is no dispute as to the evidence. Mrs. Nelson was 56 years old; her husband 56; and she left four children,—a son, 23; a daughter, nearly 21; a daughter, 19; and a son, 16. She was an industrious woman, a good housekeeper, and in good health. The following, taken from defendant's brief, is a succinct and correct statement of plaintiff's testimony:

"Prior to April, 1890, the family had lived in Monroe county. In that month Mr. Nelson took his wife and three younger children to Toledo, the elder son then living there. Mrs. Nelson. kept boarders and lodgers from the time of her going to Toledo until her death. She managed the boarding business entirely. The profits of that.

business went for the support of the family. They hardly defrayed the household expenses. Mr. Nelson had to add some to it. Sometimes he was not able to contribute much; sometimes he was. She had on the average from six to eight boarders. The rent of the house was $30 per month. She received in gross from her boarders and lodgers about $100 per month; not more. Out of that she supplied the table, paid the rent, paid for fuel and light, and clothed herself. A good part of it went for buying carpets and better furniture for rooms. She put back a considerable part of the $100 in one or two rooms. Plaintiff still has the furniture. Plaintiff stated:

"'She never turned over to me a dollar in cash. She did not furnish me with clothing or pocket money. I think she did once or twice buy a pair of pants for me. Whatever she turned over to me was trifling in amount. I cannot form any estimate of what she used for the benefit of the children in getting clothes. I cannot give any idea of how much of the $100 was profit over and above the cost of feeding and caring for boarders and lodgers. I had not the least idea in regard to that. I do not think I could give you any idea what the contribution was that my wife made for my support and that of my children, over and above the expense of the household. I have no idea what the expenses of the household were. I cannot say how much clothing she furnished to the children. She never got any for me to amount to anything. I could not give any idea of the value of the goods she furnished the children. I could give no idea of her net earnings. It would be simply guess-work.'

"Irving Nelson, the son who was 16 when Mrs. Nelson died, testified that his mother furnished him his clothing and board. He has no idea how much the clothing furnished cost. She gave him what little pocket money he had. He was then in the high school.

"Anna Nelson, the daughter who was 19 when Mrs. Nelson died, testified that, from the time the family moved to Toledo, Mrs. Nelson furnished her with clothing, board, and other necessaries. She does not know what her mother's total contribution in money and clothes was during the last year of her life. Does not know what it costs to clothe her now. Whatever Mrs. Nelson spent she earned out of the boarding-house, after paying expenses, rent, etc. The balance her mother used to clothe the children and keep up the house. She fitted up three sleeping rooms with new mattresses, furniture, and carpets and linen, and her dining room with crockery, table-

cloths, and napkins. Witness did not know about the cost of the things purchased. She assisted her mother in the household work."

Plaintiff introduced the mortality tables found in How. Stat. § 4245. The jury therefore had before them the age of the deceased, the fact that she was in good health, the mortality tables, and the testimony above given as to the services she rendered the family.

The learned circuit judge instructed the jury that these tables were not controlling or binding upon them, but that they were to give them just such consideration as they thought they were entitled to receive. The jury evidently thought them entitled to no consideration. They, as well as the other evidence, must have been entirely ignored, for there is no possible basis in them for the verdict of $7,000.

"The pecuniary injury to a husband from the death of a wife necessarily includes the loss of her services, and the measure of damages is their reasonable value." Tiff. Death Wrongf. Act, § 163.

It is not enough to prove the marriage, age, and death, and then turn a jury loose upon the field of speculation or prejudice to hunt for some basis for a verdict. *Mitchell v. Railroad Co.*, 2 Hun, 535. The compensation provided by the statute is strictly pecuniary. There can be no compensation for grief, loss of companionship, wounded feelings, or suffering, either of the deceased or of the beneficiaries, and the court so charged the jury. The services must be proven, and the value shown. The jury may then find any amount between the lowest and highest limits. If A. works for B. under such circumstances as that the law implies a contract, A. must, in order to recover, prove the services and their value. This rule holds in all cases where the law gives compensation for services. The damages must be founded upon the testi-

mony. The rule in actions of torts does not apply. *Cooper v. Railway Co.*, 66 Mich. 261. Opinion evidence of the value of such services is admissible. *Rajnowski v. Railroad Co.*, 74 Mich. 27. The sole evidence of any service rendered by Mrs. Nelson to her husband is that she provided him with board, and clothed and boarded the minor children; or, in other words, that she mainly earned and paid the household expenses, though he contributed some and his daughter assisted. The only tangible evidence of the value of pecuniary loss to him was his board, and that of his two minor children. Upon this point there was evidence of the price of board. Beyond this there was no evidence of value. Who can estimate how much she spent for clothing for herself or children? Was it $2, $5, or $10 each per month? On what basis can a jury determine this without proof? One juror, if married, might say, "It costs me so much," another a different sum, while the unmarried juror would have no experience upon which to act at all. What would be reasonable in one case would be unreasonable in another. The standard in the case upon trial is the controlling one, and evidence must be adduced to show it. If it be said that what she made in her business is the basis of the value of her services, the case is equally barren of any substantial basis for recovery. She received at the most $1,200 per year, out of which she paid the rent, $360, and the cost of fuel, lights, provisions, and her own clothing, of the value of which there is no evidence. The annual interest on $7,000 at 6 per cent. would be $420. Assuming that she netted this sum each year, it would be 35 per cent. profit from her business,—a profit hardly probable,—and leave the principal untouched. It is absurd to say, under such facts, that the husband and children sustained a pecuniary loss of $7,000.

If there had been testimony to show that her probabil-

ity of life was greater or less than that shown by the tables, then they would not have been conclusive. The jury should have been instructed that the tables were conclusive and binding, and their attention directed to the tangible evidence of the services and their value. The verdict was legally excessive, and the court should have set it aside, and granted a new trial.

In *Railway Co. v. Whitton*, 13 Wall. 270, the testimony on which the charge was based is not given. "The personal qualities, the ability to be useful, and the capacity to earn money" were held competent evidence for the jury to consider. But the case does not hold that this alone is sufficient evidence of the value of services. The expression used by some authorities, "that the damages rest in the sound reason and discretion of the jury," means that this sound reason and discretion must be exercised within the range of the evidence. Neither is the testimony given in *Railroad Co. v. Goodman*, 62 Penn. St. 329. If, however, that case holds to the doctrine that it is only essential to prove the relations of the parties; that the wife was frugal, industrious, useful, and attentive to her household duties; and that upon this evidence the jury may find the actual pecuniary loss,—we need only reply that such is not the doctrine of this Court. The abuse to which such a doctrine leads is conspicuously apparent in the present case. The correct rule was stated by the court as follows:

"The measure of damages in this case is the present value of the amount of money which the plaintiff and the minor children, during the continuance of decedent's life, would have received from her had she lived. The present valuation of a sum of money payable in the future is what that sum is worth if paid presently,—paid now. For example, the present value of one dollar at 6 per cent. at the end of one year is found by dividing one dollar by one dollar and six cents; the present value of one dollar at

the end of two years is found by dividing one dollar by one dollar and twelve cents," etc.

The error lay in the qualification of the rule as above pointed out, and the failure to direct the jury as to the proper limits of this inquiry.

The judgment is reversed, and new trial ordered.

LONG, MONTGOMERY, and HOOKER, JJ., concurred with GRANT, J.

McGRATH, C. J. This action is brought under How. Stat. §§ 8313, 8314. The court instructed the jury, as requested by defendant, that—

"If you find that the deceased was accustomed to aid her minor children by giving them money or affording them support to the amount of a certain sum annually, and that the minor son was likely to live until his majority, the most you can award in this action for the damages sustained by said minor children is the present value, ascertained as above explained, of the certain amount which would have been contributed during his minority to the son, and the present value of the sum which would have been likewise contributed to the daughters."

The court immediately added:

"I qualify that with this statement, gentlemen: Evidence has been offered here of certain tables known as 'Annuity Tables,' and also of what are known as 'Mortality Tables,' showing the probable length of human life. Those have been offered in evidence, and submitted to you, to aid you as best they may in reaching a fair conclusion in this matter as to what the real damages may be which these parties have suffered. I instruct you that they are not absolutely controlling and binding upon you. They are submitted to you, and for you to give them just such consideration as you think they are entitled to receive, and as, according to your ability, you are able to afford them. You may proceed to estimate the damages upon the theory of those tables. I do not think you are confined to that method."

It is the added portion that is complained of.

The decedent, plaintiff's wife, kept a boarding-house, and contributed to the support of both husband and children. Plaintiff had introduced as a part of his case the American Mortality Tables, as found in How. Stat. § 4245. Defendant introduced the Carlisle Annuity Tables. The only other testimony bearing upon the question of the decedent's expectancy was that giving her age at the time of the injury, and the statement that "the condition of her health was good." The *data* upon which the present value of an annuity is to be computed were before the jury, provided they were able to determine the probable duration of her life; and the instruction, so far as it related to the annuity tables, which, like interest tables, are mere computations, was undoubtedly correct. Nor are the jury confined to the *data* there disclosed. But the same is not true as to mortality tables. The *data* from which they are made up were not before the jury, nor was there sufficient before them to enable them to intelligently determine the question. These tables determine the average expectancy, and in a case where there is evidence tending to show that decedent's prospects of life were better than the average, or not equal to the average, the tables are not conclusive, but the jury are entitled to take into consideration all the testimony bearing upon the question; as, for instance, that she had enjoyed unusually good health for a long period, or that her ancestors were long-lived, etc.

In *Hunn v. Railroad Co.*, 78 Mich. 513, 528, it was said:

"Such tables are not conclusive. They show the probable age which a healthy person may expect to reach, whose age is given. But when that is before the jury, and the physical condition of the person at the time of his death, and all testimony which may reasonably affect his duration of life, the jury must determine from the testimony before them the probable duration of decedent's life had he not died as a result of his injury."

In the absence of the tables, and of the *data* from

which such tables are made up, the determination of the jury could only be conjectural; and, the plaintiff having introduced the tables, and having introduced no other testimony from which the jury could intelligently add to the period of expectancy, the tables must be regarded as controlling.

Defendant's counsel requested the court to instruct the jury that—

" The largest amount for which you are at liberty to bring in a verdict is the aggregate of the present value of the sum you find would have been contributed to the minor children during minority, and the value of the annuity to the husband, determined as already explained."

The court had, on behalf of plaintiff, instructed the jury that—

" The administrator is entitled to recover damages for such pecuniary injury as has resulted to the husband and to the minor children of the deceased from the death of their wife and mother. It is confined to pecuniary loss, and not the loss arising from grief or wounded feelings or sufferings of any kind, whether of the deceased or the plaintiff in this action, under the statute, but such pecuniary loss as they may have sustained from the loss of their wife and mother. Taking all the facts and circumstances into consideration, you may consider the personal qualities, the ability to be useful, of the party who has met with death; of course, also, the capacity to earn money. It is not proper for the jury to look upon it as a question of feeling or sympathy. The statute does not permit that, and such consideration should be dismissed from your minds."

And, at the request of defendant, that—

" In arriving at the amount of damages, the jury are not to go beyond the amount of actual money lost to the husband and to the minor children. until their majority. They must base their estimate solely upon the evidence of what the persons named had received from the deceased in her lifetime, and are not at liberty to give damages founded upon possibilities and contingencies apart from the evidence."

"The measure of damages in this case is the present value of the amount of money which the plaintiff and the minor children, during the continuance of decedent's life, would have received from her had she lived."

These instructions are involved in the request which was refused, and, inasmuch as there must be a new trial, they should be considered.

As respects the damages, while they cannot, under the statute, exceed the pecuniary loss sustained, I do not understand that such pecuniary loss is only such as follows from the discontinuance of contributions in money. The majority, at least, of wives, are not engaged in independent vocations. A farmer's wife has no separate income. A mechanic's wife, who, single-handed, manages the home and performs the household duties, contributes no money to her husband's support. It cannot be said in either case that the value of the services rendered is not susceptible of measurement in dollars and cents. The instances in which the wife does not, in the ordinary conduct of the household, perform some service which might be performed by a servant, are rare; and the cases where, even if no menial service be performed by her, she does not superintend, manage, and direct the affairs of the household, are rarer still; and to say that the loss of such service is not a pecuniary loss would be equivalent to saying that the services of a manager of affairs are incapable of pecuniary measurement.

In *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich. 205, it was held that what the decedent's parents would lose by the death would be what they were accustomed to receive or had reasonable expectation of receiving in his lifetime, and to show that they were poor had no tendency towards showing whether the receipts had been or were likely to be great or small.

In *Mynning v. Railroad Co.*, 59 Mich. 257, it was said

that the mental sufferings and injured feelings, or any other injuries which are not susceptible of being compensated by a money consideration to those who are entitled to the benefit of the statute, are necessarily excluded in determining the amount of damages.

In *Cooper v. Railway Co.*, 66 Mich. 261, decedent was but 11 years old, and it was held error to instruct the jury that they might consider such other pecuniary benefits as the parents might reasonably be expected to realize after decedent's majority.

In *Rajnowski v. Railroad Co.*, 74 Mich. 20, decedent was but 5 years of age, and it was held that the testimony of the fathers of other children as to the pecuniary value of a male child from the age of 5 years until it arrived at the age of 21 was admissible.

In *Van Brunt v. Railroad Co.*, 78 Mich. 530, the deceased was an unmarried man, 22 years of age, and had no one dependent upon him. There was no showing that decedent had ever contributed any of his earnings to any of his next of kin, or that it was expected that he would do so in the future. The Court in that case repeat the rule laid down in the Mynning case, *supra*.

In *Hurst v. Detroit City Railway*, 84 Mich. 539, it was held that the measure of damages in the case of a child 1 year and 11 months old was his prospective earnings until of full age.

No such narrow rule is laid down by any of these cases as is here contended for by defendant. They hold that, in case of the death of a person under age, the damages to the parent are limited to the prospective earnings until majority. In case of the death of a son who had arrived at his majority, the measure of damages to the parent is the discontinuance of contributions; but this latter rule is not the limit of the recovery in a case where damages to the husband are to be considered. Even the contributions.

of the son, although of age, need not necessarily be in money, but may be in any service the value of which may be susceptible of some proof, and of being compensated by a money consideration. In the present case the husband, wife, and family lived together. The wife kept roomers and boarders, but the house was the home of the family as well. Defendant's counsel insists that the damage to the husband is the loss of board and lodging at the same rate paid by other boarders. Is there no other household service that a wife performs, and is the actual value of the husband's surroundings and household privileges no greater than that of a mere roomer or boarder? While it is true that the presence and companionship of the wife are not to be considered, yet there are offices which the wife performs as the manager of the household, and there are innumerable services rendered in the care of person and apparel by the wife, which, in her absence, would have to be paid for in money. These are tangible services, and proper matters for the consideration of a jury. Proof should undoubtedly be made of the circumstances of each case, and there should be some evidence of the value of the services, as is said in the Rajnowski case, not for the purpose of controlling, but of aiding, the jury in arriving at a just conclusion. As is said in *Railway Co. v. Needham*, 3 C. C. A. 129, 147, 52 Fed. Rep. 371:

"In the measure of damages in such an action the constant factor is the practical knowledge, varied experience, and sound judgment of 12 men, and to these very much must be left. * * * The evidence in such a case presents so many facts and circumstances to be considered —the chances and contingencies of temporary and permanent illness, of accident, injury, and disability, familiar to the experience of every juryman, and proper to be considered in estimating the probable future income of any man, but sometimes incapable of proof, are so many and so varied—that human ingenuity seems incapable of form-

104 MICH.—38.

ulating a rule which shall specify every circumstance, chance, and probability that a jury may consider, and none that it may not, in estimating the earnings his death has deprived his family of."

In *Railway Co. v. Whitton*, 13 Wall. 270, which arose in Wisconsin, under a statute similar to our own, the trial court instructed the jury that plaintiff was entitled to recover for such pecuniary injury as had resulted to him from the death of his wife.

"It is confined by the language of the statute to pecuniary loss, not the loss arising from grief or wounded feelings, or sufferings of any kind, but such pecuniary loss as he has sustained from the death of his wife. * * * Taking all the facts and circumstances into consideration, you may consider the personal qualities, the ability to be useful, of the party who has met with death, and, of course, also the capacity to earn money."

This instruction was approved in an opinion by Mr. Justice Field.

In *Railroad Co. v. Goodman*, 62 Penn. St. 329, the trial court instructed the jury that—

"Damages should be given as a pecuniary compensation, the jury measuring the plaintiff's loss by a just estimate of the services and companionship of the wife, of which he was deprived by this accident; that is, of their value in a pecuniary sense. Nothing is allowable for the suffering of the deceased, nor for the wounded feelings of the plaintiff. Of course, the jury will examine the testimony to aid them in ascertaining the damages. But, if damages are to be given at all, there is no reason why they should be nominal merely. They should be a just compensation for the value of the companionship and services lost to him by reason of this unfortunate collision."

Referring to this portion of the charge, the Supreme Court say:

"Looking at the entire charge on the subject of damages, we think it clearly confined the damages to a pecuniary compensation for the loss of Mrs. Goodman's service.

The court told the jury in express language that nothing is allowable for the suffering of the deceased, nor for the wounded feelings of the plaintiff. They said also that the plaintiff's loss was to be measured by a just estimate of the services and companionship of the wife. It is thought that this meant by way of solace for the loss of companionship. But all the judge said on this point made it evident he did not mean compensation by way of solace, and could not have been so understood by the jury. 'Companionship' was evidently used to express the relation of the deceased in the character of the service she performed. He merely meant to say that the loss should be measured by the value of her services as a wife or companion. The form or expression perhaps was not the best selection of words, yet it certainly meant no more than that the pecuniary loss was to be measured by the nature of the service, characterized as it was by the relation in which the parties stood to each other. Certainly the service of a wife is pecuniarily more valuable than that of a mere hireling. The frugality, industry, usefulness, attention, and tender solicitude of a wife and the mother of children surely make her services greater than those of an ordinary servant, and therefore worth more. These elements are not to be excluded from the consideration of a jury in making a mere money estimate of value."

See, also, Tiff. Death Wrongf. Act, § 163.

The judgment is reversed, and a new trial granted.