WALKER v. LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY COMPANY.

1. Damages—Death by Wrongful Act—Parent and Child.
    The loss of occasional assistance in studies, rendered by dece-
        dent to his children, is not an element of damages for which
        recovery may be had in an action under the statute for death
        by wrongful act.

2. Costs—Second Appeal—Printing Record.
    Upon a reversal on defendant's second appeal, costs for printing
        were disallowed as to so much of the record and brief as
        related to questions passed upon in the former opinion.

Error to Kalamazoo; Buck, J.   Submitted October 22,
1896.   Decided February 2, 1897.

Case by Robert Walker, administrator of the estate
of John Walker, deceased, against the Lake Shore &
Michigan Southern Railway Company, for the alleged
negligent killing of plaintiff's intestate.   From a judg-
ment for plaintiff, defendant brings error.   Reversed.

*Boudeman & Adams* and *C. E. Weaver*, for appel-
lant.

*Osborn, Mills & Master*, for appellee.

Montgomery, J.   This case was once before the court,
and is reported in 104 Mich. 606.   A new trial has been
had, and the plaintiff on the second trial recovered a ver-
dict of $7,360.   The record is voluminous, containing a
large number of assignments of error.   The defendant
contends that the evidence on the second trial presented
a different case from that passed upon in our former
opinion, and strenuously argues that the verdict should
have been directed for defendant.   A careful exami-
nation of the record has convinced us that in no fact

material to the questions of law involved does this record differ from the former to such an extent as to change the result.   We think the charge of the court upon the subject of defendant's liability was fair, and within the lines of the former decision.   We are constrained to hold, however, that there was error in receiving evidence bearing upon the subject of damages, and in the charge of the court upon this subject.   The widow of deceased testified, under objection and exception, as follows:

" *Q.* You may state what, if anything, your husband did towards assisting his children in the matter of their schooling.

"*A.* He did all that was necessary for him to do. They would bring their arithmetic and slate home some nights.   He would help them with them.

" *Q.* Now, have your children gone to school since their father's death?

"*A.* The youngest one is all; just the youngest one. At the time of his father's death, the oldest one was attending Lake Street School.   The oldest child was in the seventh grade, I think, at the time of his father's death. Barbara was also going to school at Lake street.   She was in the seventh grade.

" *Q.* You state that they have not been sent to school since their father's death.   You may state why not.

" *A.* Because they didn't have any chance.

" *Q.* You state that they have had no chance.   What do you mean by that, Mrs. Walker?

" *A.* Because I was not keeping house so that they could go.   The oldest one hasn't been at all since that.

"*Q.* Why not?

"*A.* He did not have any home to stay to so he could go.   I was working at housework.   I went to keeping house about a year ago, and took in washings.

"*Q.* What did the boy do?

"*A.* He worked for his grandfather a while, on the farm.   Since then he has not done much of anything. He could get no work.   The daughter worked out after a while.   She worked in the card factory about a year. She was married last fall.   I have tried to keep the youngest one at school most of the time."

In his charge to the jury, the circuit judge said:

"In estimating the plaintiff's damages, you would be at liberty to take into consideration the nurture, instruction, physical, moral, and intellectual training which you may be able to find by the testimony the children of John Walker would have received from their father had he lived during their minority; that is, until they attained the age of 21 years."

And also:

"And I desire, also, at this point, gentlemen, to withdraw from your consideration entirely one piece of the testimony which was offered in the case; and that is that after the death of John Walker his family was broken up, and his widow and children went with his father to live. At the time that testimony was introduced the court had an idea that it might be of some value to you in determining this second proposition; that is, whether the family had been deprived of the value of Mr. Walker's services in attention to, superintendence, and care of his family. On reflection, the court is satisfied that it would have no value in deciding that question, so that you will disregard that testimony entirely, for every purpose, in making up your verdict."

It is very doubtful indeed if the effect of the testimony which the court recognized as improper could be counteracted by withdrawing it from the jury at that stage of the case. But we need not determine whether, if the instructions were otherwise proper, we should say that the error in the receipt of this evidence was cured, as we are of the opinion that there was error in permitting the jury, under the testimony in this case, to award a sum as damages for loss of nurture, instruction, and moral and physical training. It has been frequently decided by this court that in an action for the recovery of damages for death by wrongful act, based upon our statute, the damages to be awarded must be limited to the pecuniary loss sustained by those in whose interest the case is prosecuted. *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 214; *Balch* v. *Railroad Co.*, 67 Mich. 394; *Mynning* v. *Railroad Co.*, 59 Mich. 262; *Van Brunt* v. *Railroad*

*Co.,* 78 Mich. 530; *Nelson* v. *Railway Co.,* 104 Mich. 582.   In our former opinion in this case we said:

"We are aware that some courts have held that the jury may take into account the loss sustained by the children of the deceased for loss of physical care and mental and moral training of the father or mother, and we are not prepared to say that cases may not arise in which there may be sufficient proof of damages suffered by reason of the withdrawal of these ministrations as to justify a recovery upon that basis.   But it is distinctly against the previous holdings of this court to say that such elements may be considered, and the jury left to roam at large, and draw upon their imagination as to the extent of the injury suffered through this cause."

On the second trial there was no evidence of the value of deceased's instruction given to his children, nor of the value of any physical, moral, or intellectual training, nor could there well have been.   It was not claimed that deceased was in any sense a tutor to his children.   The most that can be inferred is that he rendered to them occasional assistance, such as a parent is supposed to render to his children, but which, in its very nature, is as incapable of measurement by a pecuniary standard as is the loss of love, affection, and sympathy.   See *Chicago, etc., R. Co.* v. *Austin,* 69 Ill. 426; *State* v. *Baltimore & Ohio R. Co.,* 24 Md. 106 (87 Am. Dec. 600).   The rulings conflict with our former opinion, and cannot be sustained.

The judgment will be reversed; but we think it would be a hardship to require the plaintiff, upon this appeal, to pay for the printing of the voluminous record and brief, in which have been presented, in the main, the same points passed upon in our former opinion.   We think the questions left us for consideration by our former opinion could have been presented by a record of 60 pages, and that a brief of 20 pages would have been ample for their discussion, and the defendant will be allowed for printing of brief and record of 80 pages.

The other Justices concurred.