SAX *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. Railroad Companies — Contract of Employment — Action for Breach — Pleading and Proof — Immaterial Variance.

Plaintiff alleged in his declaration that, after sustaining an injury on defendant's road, he entered into a contract with the defendant, whereby he released the company from all liability for damages, and defendant agreed to re-employ him, so long as his services should be satisfactory, as a passenger brakeman, at which he had been employed theretofore. The evidence showed that plaintiff had been employed before the injury as a brakeman on a freight train, and was employed thereafter as brakeman on a passenger train. *Held,* that the variance as to plaintiff's former occupation was immaterial.

2. Same — General Superintendent — Implied Authority — Ratification of Contract.

The general superintendent of a railroad will be presumed, in the absence of proof to the contrary, to have authority to ratify an agreement by a train-master to give employment, so long as the employé's services should be satisfactory, in settlement of a claim for personal injuries.

3. Statute of Frauds — Oral Contract — Performance Within Year.

An agreement to employ one so long as his services are satisfactory may be performed within one year, and need not, therefore, be in writing.

4. Railroad Companies — Contract of Employment — Consideration — Mutual Promises.

Where plaintiff, who was out of employment, agreed to release defendant from all liability for damages for injuries received by him in defendant's employ, in consideration of defendant's promise to re-employ him so long as his services should be satisfactory, the promises were mutual and binding.

5. Same — Employment During Satisfaction — Wrongful Discharge.

Where the defendant company agreed to employ plaintiff as a brakeman so long as his services should be satisfactory, a dis-

charge of plaintiff because a brakeman was no longer needed on the train on which he worked constituted a breach of the contract.

6. SAME—DAMAGES—MORTALITY TABLES.

Where a contract for the employment of plaintiff so long as his services should be satisfactory was wrongfully violated by defendant, and plaintiff brought action for the breach, the mortality tables were improperly admitted to aid the jury in assessing the damages.

Error to Shiawassee; Smith, J. Submitted October 12, 1900. Decided November 13, 1900.

Case by William J. Sax against the Detroit, Grand Haven & Milwaukee Railway Company for the breach of contract of employment. From a judgment for plaintiff, defendant brings error. Reversed.

*Geer & Williams* (*E. W. Meddaugh*, of counsel), for appellant.

*Watson & Chapman*, for appellee.

HOOKER, J. The plaintiff's hand was injured while acting in the capacity of brakeman upon a freight train upon the defendant's railroad, and he was idle for about four months. He then resumed work as a passenger brakeman upon another branch of defendant's road, and worked about four months, when he was dismissed, according to plaintiff's claim, and laid off because the service of a brakeman was dispensed with upon his trains, according to the defendant's contention. He brought this action to recover damages for the breach of a contract which he says was made between the defendant and himself after his injury, whereby, in consideration of a release of a claim for damages upon account of his injury, the defendant promised to give him a permanent position in its employ, which was to last during his lifetime, as long as his services and conduct were satisfactory to the company. The defendant has brought error upon a judgment of $1,950 in plaintiff's favor.

The first point raises the question of a variance between the declaration and proof. Plaintiff's declaration stated that:

"And afterwards, on, to wit, the 15th day of January, A. D. 1896, said plaintiff and said defendant entered into a contract as follows: Said plaintiff agreed to release all claims against said defendant for damages on account of the above-named injuries in consideration that said defendant would give him re-employment so long as his services and conduct were satisfactory, said plaintiff having been theretofore employed by said defendant as a brakeman on a passenger train, and by the terms of said contract said defendant agreed to re-employ him as such."

The proof shows that his previous service was as brakeman on a freight train, while the declaration alleged that he had been employed upon a passenger train. The question was raised at the close of the testimony by a motion to strike out the evidence because the declaration alleged an agreement to employ the deceased as a passenger brakeman, while the proof tended to show a promise to employ him as a brakeman on freight trains, or to give him a permanent position. It was also raised upon a request to direct a verdict for the defendant. The declaration explicitly alleges that the defendant promised to employ the plaintiff as a passenger brakeman. Plaintiff testified that the agreement was to give him a permanent position during his lifetime, as long as he should perform his duties to the satisfaction of the company, and that there was talk about the kind of employment, and Mr. Cooper, the train-master, offered him the place of a gate-tender, and that he refused that, and asked for a passenger run on the T., S. & M. branch. Cooper said he (the plaintiff) would have to see Mr. Atwater. He afterwards went to see Mr. Atwater, the general superintendent, at his office, and had a conversation with his clerk, who went into the next room, and told Mr. Atwater that Mr. Sax was there; and that Mr. Atwater said, "You tell Mr. Sax that we have made provision for him over on the T., S. & M.," and that he heard this conversation between the clerk and Atwater.

Atwater then said that he should report for duty to Mr. Wykes, who was defendant's agent at Owosso, and he did so about two months later.   Wykes gave him a release to sign, and he went to work as a passenger brakeman. From this testimony it might be found that the minds of the parties met upon an employment as passenger brakeman, which is what the declaration alleges.   The only variance between the declaration and the proof relates to a recital of his former occupation, which is an unsubstantial matter, and therefore immaterial. *Lull* v. *Davis*, 1 Mich. 77; *Lothrop* v. *Southworth*, 5 Mich. 436; *Arnold* v. *Nye*, 23 Mich. 286; *Barton* v. *Gray*, 48 Mich. 164 (12 N. W. 30); *Bennett* v. *Beam*, 42 Mich. 346 (4 N. W. 8, 36 Am. Rep. 442); *Tillman* v. *Fuller*, 13 Mich. 113; *Patterson* v. *Railroad Co.*, 56 Mich. 172 (22 N. W. 260).

It is claimed that the talks with Cooper, and Main (the clerk), and Atwater were not admissible, because their authority to make such contract was not proved.   If the matter rested upon the talk with the train-master, we should sustain defendant's contention, under the decision in *Maxson* v. *Railroad Co.*, 117 Mich. 218 (75 N. W. 459); but, taken in connection with the conversation of the general superintendent, and the presentation of the release, which had been demanded in the talk with Cooper, and the subsequent employment, and the failure of defendant to introduce evidence to the contrary, we think this conversation pertinent as tending to show knowledge and ratification of Cooper's offer, and completion of the contract, by the general superintendent, whose authority in matters pertaining to the business of operating the road will, in the absence of proof to the contrary, be presumed to cover such a contract.   1 Elliott, Railroads, § 297.

Counsel say that the court erred in refusing to direct a verdict for the defendant: (1) Because the contract was not in writing; (2) because there was no consideration for the promise; (3) because the defendant had a right to terminate it at will.   The contract in question might have

been performed within a year, and therefore the first point is not well taken. *Smalley* v. *Mitchell*, 110 Mich. 650 (68 N. W. 978). The execution of the release and a promise to re-employ were mutual promises, and the contract was, therefore, binding. The difference between this case and *Potter* v. *Railway Co.*, 122 Mich. 179 (81 N. W. 80), is easily apparent. The case does not fall within the rule of *Koehler* v. *Buhl*, 94 Mich. 496 (54 N. W. 157), because there is no claim in this case that plaintiff was discharged for the reason that the company was dissatisfied with him.

The court permitted the introduction of the mortality tables, as evidence bearing on the expectancy of life, in connection with the question of damages. It is urged that they ought not to be applied to a contract which the defendant might terminate at will. In answer to an inquiry made by a juror, the court told the jury that they should allow him damages, subject to his probable earnings, up to the expectancy of life, and that they should not take into account a possible re-employment by the defendant. Under the contract alleged and proved, the defendant had the right to terminate the employment whenever the plaintiff did not perform his duties to the entire satisfaction of the defendant. Under the rule as settled in this State, the reasons for, or justice of, the defendant's satisfaction cannot be inquired into. See *Wood Reaping, etc., Machine Co.* v. *Smith*, 50 Mich. 570 (15 N. W. 906, 45 Am. Rep. 57); *Bucksport, etc., R. Co.* v. *Inhabitants of Brewer*, 67 Me. 295; *Singerly* v. *Thayer*, 108 Pa. St. 291 (2 Atl. 230, 56 Am. Rep. 207); *Seeley* v. *Welles*, 120 Pa. St. 75 (13 Atl. 736); *Campbell Printing-Press Co.* v. *Thorp*, 36 Fed. 414 (1 L. R. A. 645); *Pierce* v. *Cooley*, 56 Mich. 552 (23 N. W. 310); *McCormick Harvesting-Machine Co.* v. *Cochran*, 64 Mich. 641 (31 N. W. 561); *Plano Manfg. Co.* v. *Ellis*, 68 Mich. 105 (35 N. W. 841); *Platt* v. *Broderick*, 70 Mich. 580 (38 N. W. 579); *Koehler* v. *Buhl*, 94 Mich. 500 (54 N. W. 157). It was admitted that the defendant com-

pany discontinued the service of the plaintiff when the service of a brakeman on the trains upon which he was at work was dispensed with, for that reason, through Mr. Cooper, the train-master.   It affirmatively appears, therefore, that he was not laid off by reason of dissatisfaction with his service, and a failure to employ him thereafter constituted a breach of the contract.

It has been held in some cases that mortality tables were not admissible in negligence cases where the injury did not result in death or permanent disability.   See *Mott v. Railway Co.*, 120 Mich. 127, 136 (79 N. W. 3); *Nelson v. Railroad Co.*, 38 Iowa, 568.   In Texas it is held that the disability must be not only permanent, but total, to admit of such proof.   In *Texas-Mexican R. Co. v. Douglass*, 69 Tex. 699 (7 S. W. 77), it was said that such evidence is admissible only when the earning capacity is entirely destroyed, and that, when the disability is only partial, such evidence would tend to confuse the jury. See, also, *St. Louis, etc., R. Co. v. Nelson*, 20 Tex. Civ. App. 541 (49 S. W. 710); *McDonald v. Railroad Co.*, 26 Iowa, 139 (96 Am. Dec. 114).

Upon the theory that plaintiff had contracted for employment for life, and that the defendant wrongfully refused further employment after the expiration of four months, the jury might take into consideration the probable period of his ability to perform service; and the probable duration of his life would, in such case, be an element in that problem.   *Freeman v. Fogg*, 82 Me. 408 (19 Atl. 907); *Parker v. Russell*, 133 Mass. 74; *Tippin v. Ward*, 5 Or. 450; *Schell v. Plumb*, 55 N. Y. 592; *Burritt v. Belfy*, 47 Conn. 323 (36 Am. Rep. 79).   The tables of mortality are admissible wherever the expectancy of life properly comes in controversy.   They are not conclusive, however.   *Nelson v. Railway Co.*, 104 Mich. 582 (62 N. W. 993); *Damm v. Damm*, 109 Mich. 619 (67 N. W. 984, 63 Am. St. Rep. 601).   In this case there were elements to be considered other than the duration of his life.   The jury were instructed that they should find how much

he was earning under his employment by defendant, and that whatever the evidence showed to be the value of other employment that he had been able to get should be deducted from such former earnings, and that would give them a starting point. From a colloquy with a juror they must have understood that the computation should be made upon his expectancy of life, subject to the deduction of what they should find he might earn up to the time of his death, and subject to a reduction to the present value. The jury were expressly told that they could not consider any liability of his re-employment. The theory of the defendant appears to have been that he was not discharged; but, whether this was so or not, or if the failure to employ for four months constituted a breach of the contract justifying a refusal to re-enter the defendant's employ (a question not discussed, and therefore not passed upon), it was proper for the jury to consider an offer of re-employment from the railroad, if there was a probability of any, as bearing upon the probable amount of his future ability to earn. His probable infirmity was also important in this connection.

Again, the contract was not to employ for life. It was limited by the provision as to his giving satisfaction, and that also was an element that should have been considered by the jury. But the contract was, in effect, merely a contract to employ so long as his service should prove satisfactory. Under the cases cited, the mortality tables should have been excluded.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.