## Corgan, Appellant, *v.* George F. Lee Coal Company.

*Master and servant—Dismissal of servant—Grounds for dismissal.*

Where a person is employed by a mining company as foreman "for so long a time up to five years that he satisfactorily performs his duties as foreman," the company has the absolute right, whenever it becomes in good faith dissatisfied with the services of the foreman, to discharge him; and if the company discharges him for a cause assigned and not sufficient, and it appears that at the time the company had the right to discharge him for another cause, such discharge will not be unlawful because a wrong reason had been given for it.

The master is not bound to give any reason for the dismissal at the time, and if he does, he is not thereby estopped from setting up any other, or different cause, which really existed when the servant was discharged.

*Corporations—Dividends and profits—Suit for dividends.*

A shareholder cannot ordinarily sue the corporation for his share of accumulated profits until a dividend has been declared, a matter which generally rests within the sound discretion of the directors, which discretion the courts will not control unless it has been plainly abused.

The sale of the stock of a corporation carries to the vendee the right to all dividends thereafter declared, and this is the case, although the profits from which such dividends have been declared, may have accrued prior to the sale of the stock.

*Mines and mining—Mine foreman—Mine superintendent.*

A person who was employed as a "mine foreman" and whose duties as such are confined to the underground portion of a colliery which constitutes the mine proper, is not the superintendent of the colliery within the meaning of the Act of June 2, 1891, P. L. 176, and is therefore not required to give the notices prescribed by article 14.

*Appeals—Review—Reasons for judgments.*

The appellate court does not review reasons for judgments. If the judgment be right, even though the reasons given wholly fail to sustain it, or would logically lead to a different one, it must stand.

Argued April 15, 1907. Appeal, No. 335, Jan. T., 1906, by plaintiff, from order of C. P. Luzerne Co., May T., 1904, No. 271, refusing to take off nonsuit in case of Michael H. Corgan v. The George F. Lee Coal Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit for breach of contract of employment, and also to recover undivided profits.   Before HALSEY, J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Richard B. Sheridan,* with him *James L. Lenahan, James P. Costello* and *John T. Lenahan,* for appellant.—It was not appellant's duty to give the notice to the mine inspector : Durkin v. Kingston Coal Co., 171 Pa. 193.

Appellant's employment being an inside foreman, his neglect to perform the duties of superintendent would not justify his discharge.

The uncontradicted evidence in the case is that appellant was discharged, not because of any neglect of duty, but because he refused to relinquish his claim against the company arising out of a collateral matter : Hand v. Clearfield Coal Co., 143 Pa. 408 ; Clay Commercial Telephone Co. v. Root, 17 W. N. C. 200 ; Henderson v. Hydraulic Works, 9 Phila. 100.

We offered to show that instead of declaring dividends, all parties interested agreed that the earned surplus was to be distributed.   They adopted this method of paying or distributing the profits, and when Mr. Lee set aside a surplus it was in reality the declaration of a dividend, according to the method adopted.   Of the amount set aside appellant did not receive his share, although distribution was made among the other stockholders : Lehigh Crane Iron Co. v. Com., 55 Pa. 448.

Even if the contract be construed as making the employer the sole judge of the performance, the genuineness of his dissatisfaction is for the jury : Boiler Works v. Schnader, 155 Pa. 394 ; Singerly v. Thayer, 108 Pa. 291.

*John McGahren,* with him *Frank Donnelly,* for appellee.— The defendant being guilty of gross negligence and incompetence, according to his own testimony, should not be allowed to question the dissatisfaction of the defendant : Campbell Printing Press Co. v. Thorp, U. S. C. Ct. 1 L. R. A. 645 ; McCarren v. McNulty, 73 Mass. 139 ; Frary v. American Rubber

Co., 18 L. R. A. 644; Delahunty Dyeing Machine Co. v. Penna. Knitting Mills, 19 Pa. Superior Ct. 501; Kennedy v. Poor, 151 Pa. 472; Matthews v. Park Brothers & Co., 146 Pa. 384.

The managing agents of the company have a discretionary power to determine the time. and manner of making the payment, and they are in many instances authorized to reinvest the profits in the business of the company. This discretion cannot be impaired by the courts: 1 Morawetz on Corporations, p. 277; McLean v. Plate Glass Co., 159 Pa. 112.

OPINION BY MR. JUSTICE POTTER, May 27, 1907:

This is an appeal from the refusal to take off a judgment of compulsory nonsuit. Complaint is also made of the rejection of certain evidence, offered to show the withholding of dividends or profits alleged to be due to appellant. The plaintiff was employed as "inside foreman" by the defendant, a corporation operating a colliery. He was engaged at a salary of $125 a month, under a contract which provided that his appointment was to be "for so long a time up to five years, that said M. H. Corgan satisfactorily performs his duties as foreman for said company." Plaintiff also purchased seventy-five shares of the capital stock of the defendant company, par value $100 per share, for which he paid $1,500. He entered upon his duties under the contract of employment and so continued until February 13, 1904, when he was discharged. He then brought this suit, claiming to recover damages for the breach of the contract of employment, and certain dividends and profits which he alleged had wrongfully been withheld from him upon the seventy-five shares of stock which he had purchased.

Upon the trial, plaintiff testified that Mr. Lee, the manager, had expressed no dissatisfaction with his work; but that, in January, 1904, plaintiff had made demands, through his attorney, for the proportionate profits which he alleged were due him on his stock, and thereupon Lee came to him and said that he could not have a man in his employ who was lawing him, and asked plaintiff to withdraw the threatened suit, or else resign. Plaintiff refused to resign, and Lee then said he would have to discharge him, which he did after thirty days' notice. He testified that no complaint was made as to his work, and no other reason was given for the discharge, except the threat-

ened suit. Prior to the discharge, the plaintiff had sold his stock to Mr. Lee, for the sum of $5,000, and had transferred it to him. It also appears from the testimony that while he held the stock, he received upon it, not as dividends formally declared, but as a division of earnings or profits, made by general consent, more than $2,500. On cross-examination plaintiff admitted that while he was in charge, there were two squeezes or " cave-ins " at the mine, which resulted in considerable loss to the defendant company. He also admitted that he had given no notice to the mine inspector of the fact that he was going to rob or skip the pillars in the mine, which action was the cause of the caving in. Nor did he give the mine inspector notice of the squeezes. He did, however, make regular monthly reports to the mine inspector in his capacity as mine foreman.

The contract of employment was for a definite term, provided the duties of the employment were satisfactorily performed; and the only reasonable inference from the language used, is that the services were to be satisfactory to the management of the employer, the defendant company. Under such a contract, it is well settled that the employer " has the absolute right, whenever he becomes in good faith dissatisfied with the services of the employee, to discharge him; and it has been held immaterial in such a case that in fact no valid grounds for discharge exist. Under a contract of this character the dissatisfaction of the master must be genuine: " 20 Am. & Eng. Ency. of Law (2d ed.), 15. It is suggested here, that dissatisfaction with the manner in which plaintiff performed his duties as foreman was not alleged, as a reason for the discharge; but in Allentown Iron Co. v. McLaughlin, 1 Monaghan, 726, it was held by this court, that while the master might not have the right to discharge his servant for the cause assigned by him, " if, at the time, the defendant company had a right to discharge him for any cause, such discharge would not be unlawful because a wrong reason had been given for it." The same principle is laid down in Wood on Master & Servant, sec. 121: " The master is not bound to give any reason for the dismissal at the time, and if he does, he is not thereby estopped from setting up any other or different cause which really existed when the servant was dis-

charged." Other authorities to the same effect are numerous. Thus in Rossiter v. Cooper, 23 Vt. 522, where a contract of employment provided that the employer, if he became dissatisfied, had the right to dismiss the employee upon giving him one day's notice, it was held that the employer was at liberty at any time to put an end to the contract, without informing the employee of the ground of his dissatisfaction, and without in fact having any satisfactory reason for it. In Koehler v. Buhl, 94 Mich. 496, it was said: "It is settled law that, where a person contracts to do work to the satisfaction of his employer, the employer is the judge, and the question of the reasonableness of his judgment is not a question for the jury." As we coincide with this view of the case, it is unnecessary to examine the grounds, which the court below regarded as sufficient to justify the defendant company in discharging the plaintiff from its employment. The evidence is ample to show that the dissatisfaction was genuine, and there is nothing to show that it was malicious. Whether or not it was well founded, we need not inquire.

As to the question raised by the second assignment, we can see no error in the exclusion of the evidence which was offered to show that the plaintiff had not received the share which he claimed, of the surplus funds in the treasury of the company. In his statement, the plaintiff claims dividends or profits. But he does not allege that dividends as such have been declared by the corporation. On the contrary, the offer of evidence which was excluded, expressly admitted that no dividends had been declared. Until they were, the plaintiff was in no condition to lay claim to them in this suit. "A shareholder cannot ordinarily sue the corporation for his share of accumulated profits until a dividend has been declared, a matter which generally rests within the sound discretion of the directors, which discretion the courts will not control unless it has been plainly abused:" 10 Cyc. L. & Pr. 566. If any such agreement was made, as plaintiff sets forth in his statement, under which the dividends and profits were to be declared and paid monthly, it could be enforced only in a court of equity. It will be remembered also that the plaintiff had sold his stock prior to the bringing of this suit; and as admittedly no dividend had actually been declared prior to the transfer of the

stock, it is difficult to see how the plaintiff has any standing in this respect. Nor would he have any right to participate in any distribution of profits made after the transfer. The law in this respect is thus summed up in 2 Cook on Corporations (5th ed.), sec. 539: "As between the vendor and vendee of shares of stock, it is a settled rule that the vendee is entitled to all the dividends of the stock which are declared after the sale of the stock. Even though the transfer has not been recorded, the transferee has a right to the dividends as against the transferer. The law, moreover, refuses to investigate the question when the dividend was earned. In contemplation of law the net profits are earned at the instant the dividend is declared. This rule is just, inasmuch as the accrued profits and expected dividends enter into the value and price at which the stock is sold." Citing Coleman v. Columbia Oil Co., 51 Pa. 74, and numerous other cases.

In the Act of June 2, 1891, P. L. 176, article 12, rule 1, it is provided that "The owner, operator or superintendent of a mine or colliery . . . . shall place the underground workings thereof, and all that is related to the same, under the charge and daily supervision of a competent person who shall be called 'mine foreman.'" Article 14, section 2, provides that "The owner, operator or superintendent of a mine or colliery" shall give notice to the mine inspector of the district in certain cases, among others, "Fifth. Where the pillars of a mine are to be removed or robbed," and "Sixth. Where a squeeze or crush or any other cause or change may seem to affect the safety of persons employed in any mine." It would seem, therefore, that the court below was in error in holding that the plaintiff who was employed as a "mine foreman," and whose duties as such were confined to the underground portion of the colliery which constituted the mine proper, was the superintendent of the colliery within the meaning of the act. If he was not superintendent, he was not required under the law to give the notices prescribed by article 14. Even had he been so required, the same duty rested upon the owner and operator of the mine, and the consequences of their default could not justly be visited upon the plaintiff unless the performance of that particular duty had been delegated to him, and of this there was no evidence. However, if the plaintiff failed to make out

a case that entitled him to go to the jury, the court below committed no error in refusing to take off the nonsuit, even if it did assign an erroneous reason for its entry. To quote from Brew v. Hastings, 206 Pa. 155, "As we have more than once said, we do not review reasons for judgments. If the judgment be right, even though the reasons given wholly fail to sustain it, or would logically lead to a different one, it must stand."

The judgment of compulsory nonsuit entered in this case is affirmed.