## SILSBY MANUF'G CO. *v.* TOWN OF CHICO.

(*Circuit Court, D. California.* September 7, 1885.)

1. **SALE—ARTICLE MANUFACTURED FOR PURCHASER.**
    Where, under a contract, an article is to be made and delivered which shall be satisfactory to the purchaser, *it must in fact be satisfactory to him*, or he is not bound to take it.
2. **SAME—FRAUD ON PART OF PURCHASER.**
    Where the purchaser is in fact satisfied, but fraudulently and in bad faith declares that he is not satisfied, the contract has been fully performed by the vendor, and the purchaser is bound to accept the article.
3. **SAME—STEAM-ENGINE—COMMITTEE TO BE SATISFIED.**
    Where a steam-engine satisfactory to a committee of a town is furnished, and after the contract is made, and before tender of the engine, the members of the committee are changed, the committee to be satisfied is the committee existing when the contract is performed and the tender made.

At Law.

*Wm. H. H. Hart, Park Henshaw,* and *A. B. Colton,* for plaintiff.
*W. C. Belcher, J. D. Sproul,* and *F. C. Lusk,* for defendant.

SAWYER, J.   The only question in the case upon which I have any difficulty arises out of the following provision of the contract:

"The Silsby Manufacturing Co. will send the above-described steam fire-engine to Chico, *subject to the approval of the fire committee, and will warrant the workmanship, finish, and performance* of the machine *satisfactory to them,* or *remove the same without expense,*" etc.

The authorities are abundant to the effect that upon a contract containing a provision that an article to be made and delivered shall be satisfactory to the purchaser, *it must be satisfactory to him,* or he is not required to take it.   It is not enough that he ought to be satisfied with the article; he *must* be satisfied, or he is not bound to accept it.   Such a contract may be unwise, but of its wisdom the party so contracting is to be his own judge, and if he deliberately enters into such an agreement he must abide by it.   To this effect are *McCarren* v. *McNulty,* 7 Gray, 139; *Brown* v. *Foster,* 113 Mass. 136; *Zaleski* v. *Clark,* 44 Conn. 218; *Gibson* v. *Cranage,* 39 Mich. 49; *Gray* v. *Central R. Co.,* 11 Hun, (N. Y.) 70; *Hallidie* v. *Sutter St. R. Co.,* 63 Cal. 575; *Heron* v. *Davis,* 3 Bosw. 336; *Wood Machine Co.* v. *Smith,* 50 Mich. 570; S. C. 15 N. W. Rep. 906; *Hoffman* v. *Gallaher,* 6 Daly, 42.

At the time the contract in question was made Messrs. Burke, Snook, and Hendricks constituted the fire committee.   At the date of the required performance and of the tender of the engine there had been a change of two members, and the committee was composed of Messrs. Burke, Noonan, and Croissant.   I think the committee to be satisfied is the one in existence at the time of the performance and tender.   The old committee had ceased to exist, and had no longer any authority to act in the capacity of a committee.

It is admitted by both parties that the engine failed on the first trial, and some of the witnesses testified that the failure was a complete and signal one; but the vendor claimed the failure to be in consequence of poor coal.   A second and more thorough trial was had with better coal,—cannel coal,—and it is claimed by plaintiff that the engine in fact performed all its functions strictly in accordance with the specifications and requirements of the contract, and that the committee ought to have been satisfied, if they were not.   The testimony was very full on this point, though to a considerable extent in conflict. Although there seems to be some ground for a difference of opinion on this point, upon the whole I am constrained to think, though not with entire confidence, that it did come up to the specifications, and that the committee might well have been satisfied.   All the three parties who composed the committee at the time the contract was made, and who signed the contract, were satisfied with its performance, and considered that the engine, in all particulars, came fully up to the requirements of the contract; and they so reported to the board of trustees.   But a majority of the committee, as then constituted, Messrs. Noonan and Croissant, officially reported that the performance was not satisfactory to them; that the engine failed to get up

steam in the time required, and to keep up steam to a sufficiently high point to work continuously and effectively; and that they were not satisfied with its performance in these particulars. Burke, constituting a minority of the committee of three, made a contrary report. The town trustees, acting on the report of the majority, rejected the engine. If this were all, there can be doubt upon the authorities, I think, that the engine was properly and lawfully rejected.

But it is insisted, and there is some ground for suspicion on this point, that notwithstanding the report of Mr. Noonan that he was not satisfied with the engine in the particulars indicated, yet he was in fact satisfied in his own mind, and so expressed himself in private conversations with Mr. Silsby and other private parties, but that in consequence of popular feeling, and an opposition to the contract and to the purchase of any engine of that make and character at all, developed in the town of Chico after the making of the contract, he had ignored his own convictions in regard to the performance of the engine, and falsely and in bad faith reported against it, in obedience to general popular clamor, in order not to injure his business or his own popularity among his neighbors.

I am disposed to think that if such were clearly shown to be the state of facts, the court would be justified in disregarding the official report, as having been made in bad faith and in fraud of the rights of the other contracting party, and in adopting Noonan's own real conviction upon the subject. But I cannot say that the state of facts claimed is so satisfactorily shown as to justify me in holding the performance of the engine to be in fact satisfactory to Mr. Noonan, in the face of his official report, and his positive testimony to the contrary. There is, undoubtedly, testimony tending strongly to support the hypothesis insisted on by plaintiff, and circumstances tending to throw strong suspicion upon the acts in question. Mr. Silsby testifies that on the evening of the test, Mr. Noonan "expressed himself as being perfectly satisfied with the engine." He says:

"The next day after the trial, at his store, in Chico, Alderman J. C. Noonan said to me: 'Mr. Silsby, I am perfectly satisfied with the engine. There is a great deal of feeling here over the matter, and I am afraid it will injure me in my business. They are bringing strong pressure on me to vote against the acceptance of the engine, and if I do so, I shall brand myself a coward, because the engine is all you claim for it.'"

Mr. Burke testifies that Noonan told him, in answer to a question as to how he liked the engine, "that it did all and more than was required of it,—that is my recollection;" but that he could "not purchase the steamer," because "public opinion was so great;" that "public opinion was too strong against it," and "I will vote against it, and I will vote myself a coward in doing so." Mr. Sproul testified that in a conversation with Noonan, in regard to the merits and demerits of the machine, in the month of April, after the arrival of the engine, but he could not tell "whether it was after this test or not," in which

he referred to public opinion against the engine, and in that connection said: "So far as I can see, the engine fulfills all the qualifications."

Mr. Noonan positively denies having any conversations of such character as stated by the witnesses; denies that he ever stated to either of them that he was satisfied with the engine, or that he should vote to reject it in consequence of public opinion. He admits having a conversation with Mr. Silsby upon the subject, but not of the purport stated by Mr. Silsby. The following, said he, is "just exactly the shape I put that in: I said that I did not care to prejudice myself as against public opinion; that it would not be fair for me to condemn his engine because of public opinion; *that it would be condemned for other causes; that I did not think the engine came up to the requirements of the contract.*" He states that he expressed his dissatisfaction to Silsby, and the particular points among them were: "As I understood the contract, and was disposed to interpret it, we were to have a body of water on the house on fire in four to six minutes; that this was needed in a town built of wood, like Chico, where there are very dry summers. Inasmuch as she did not produce such a stream, I thought it was wrong; I thought she should do that." And there was testimony that there were other engines that would do that. In another place he says a stream of water could not be got on a house in less than 13 minutes. He said Silsby appealed to his sympathy, and said he would rather give a thousand dollars than to have the engine rejected, it would do him so much injury. He says that he did sympathize with Silsby, and was desirous that the engine should stand the trial.

Under the contract the engine was "warranted to raise steam from cold water in *from four to six minutes,* and to generate and maintain an ample working pressure of steam for effective fire purposes." Noonan claims to have been dissatisfied on both these points. There is room for discussion as to what is meant by the phrase, "raise steam from cold water in from four to six minutes." Testimony of witnesses was taken upon the point, and different witnesses understood the phrases differently. Mr. Noonan appeared to be a candid and intelligent witness, and there is nothing to throw suspicion on his truthfulness except the testimony as to his statements different from those made as a witness on the stand. He appears to be a somewhat prominent business man of Chico, and to hold one of the most important city offices.

No two witnesses seem to have heard the same conversation. Loose conversations, heard and considered from different standpoints, are liable to be misunderstood or misinterpreted, as well as misremembered, after the lapse of considerable time. Noonan certainly ought to know what he intended to say. If he intended to disregard his own convictions, and do an act which he acknowledged at the time to be both wrong and cowardly, it seems highly improbable, if

not impossible, that he would boldly declare his base and cowardly purpose to the man he was about to injure by such action. I cannot help thinking that there must have been some misapprehension as to what he did say, or intended to say, or some misrecollection of his language. At all events, in the face of his formal official report and action, and his positive testimony on the stand as to what he intended to say, and what he did in fact say, the testimony in regard to loose conversations on the occasions referred to by the other witnesses, whose views and sympathies were with the other side, and who viewed the matter from a different standpoint, is scarcely sufficient to brand Mr. Noonan with acting in bad faith, and perpetrating a deliberate fraud upon complainant by reporting himself as not being satisfied, when in fact he was satisfied, or to convict him of deliberate perjury in support of his action. The burden of showing, by preponderating evidence, that he did this act in bad faith, and in fraud of the plaintiff's rights, is on the plaintiff.

There were other witnesses who did not think the engine came up to the specifications in its performance. Although it is not without some hesitation, I am disposed to think, upon the whole, that the committee ought to have been satisfied, and accepted it. Yet it must be confessed, I think, that there might well be an honest difference of opinion upon the subject. I cannot, therefore, find upon the evidence that Noonan was in fact satisfied with the performance of the engine, or satisfied that it came fully up to the guaranty in its performance. The first trial was conceded to be a failure, and was stated by some witnesses to be a lamentable one. In order to make the final test a success, it was necessary to send to the neighboring city of Marysville, both for the quickest coal for fuel that could be had and for an engineer of long experience with this kind of engine to manage it. Some of the witnesses said it took three men to fire her during the trial, one to break the coal into small pieces, and two to supply the engine. Some witnesses on the other side said the door was open a considerable portion of the time; others did not see the door open except when necessary to put in coal, although in a position to see such occurrences. Undoubtedly, it required the most favorable conditions, and most earnest and persistent efforts, to make the test a success; and from the testimony it may well be doubted whether in actual practice at fires the performance would come fully up to the requirements of the guaranty. Under all the circumstances, however, I am inclined, upon the whole, though with considerable hesitation, to think that the committee ought to have been satisfied; yet upon all the evidence I cannot say that it has been satisfactorily proved by a preponderance of evidence that Noonan was in fact satisfied, and, notwithstanding his convictions, in bad faith fraudulently reported that he was not satisfied. I must therefore reject the hypothesis sought to be maintained on this point, and relied on by plaintiff.

There is no claim that the other member of the committee who acted with Noonan did not act in strict accordance with his convictions.

As the engine was to be furnished "*subject* to the approval of the fire committee," and its "performance" "warranted" to be "satisfactory to them," or "to be removed without expense to the town," and it was *not* approved by them, and its performance *was not satisfactory* to them, there can be no recovery on the contract.

It is clear to my mind, from the evidence, that there was no acceptance of the engine on the part of the town of Chico, and no act of the defendant, or its officers, by which it is estopped from denying the liability of the defendant on the contract, or otherwise. As there is no appeal, I have considered the case with great care, in order to reach a correct conclusion, and I am constrained to say that in my judgment the plaintiff is not entitled to recover; and that judgment must be rendered for defendant. Let a general finding be drawn in favor of defendant, and judgment be rendered accordingly.