THE PLANO MANUFACTURING COMPANY v. PETER ELLIS.

*Contract — Construction—Sale—Agreement that binder will " do good work and give satisfaction."*

| | |
|---|---|
| 68 | 101 |
| 70 | 580 |
| 68 | 101. |
| 78 | 77 |
| 68 | 101 |
| 124 | 292 |
| 68 | 101 |
| 125 | 256 |
| 68 | 101 |
| 127 | 657 |
| 68 | 101. |
| s35NW | 841 |
| 131 4 | 60 |
| 68 | 101 |
| 158 | ³254 |

1. A cardinal axiom in the construction of a written contract is that all of its parts must be examined, and effect given to every word and phrase, if practicable.
2. The language used, if unambiguous, must be held to express the intention of the parties.
3. It is only where the language employed is not free from doubt or uncertainty that resort may be had to the condition of the parties, the subject-matter of the contract, and the circumstances surrounding the transaction and connected therewith, to aid the court in arriving at the intention.
4. The written contract relied upon in this case reads as follows:

" We hereby agree to let Peter Ellis have the sample Plano binder, 1885, at the same price that Mr. Rheam has his for, and the binder is to do good work and give satisfaction; and, if not, the said Ellis is to pay for use of same."

*Held*, that the agreement that the binder was to do good work and give satisfaction embraced independent conditions, and unless the binder gave satisfaction to Mr. Ellis, as well as doing good work, he was not obliged to keep and pay for the machine.

*Held*, further, that a proper construction of the contract clearly

brings it within the first class of such contracts referred to in the case of *Wood Reaping, etc., Co. v. Smith,* 50 Mich. 565, 569, and is governed by the decision in that case.[1]

Error to Berrien. (Smith, J.) Argued November 10, 1887. Decided January 5, 1888.

Assumpsit.. Defendant brings error. Reversed. The facts are stated in the opinion.

*Theo. G. Beaver,* for appellant.

*Geo. F. Edwards,* for plaintiff.

CHAMPLIN, J. On the eighth day of July, 1885, the plaintiff, through its agents, Harder & Haynes, entered into an agreement with defendant in writing, as follows:

"NILES, MICHIGAN, July 8, 1885.
" We hereby agree to let Peter Ellis have the sample Plano binder, 1885, at same price that Mr. Rheam has his for, and the binder is to do good work and give satisfaction; and, if not, the said Ellis is to pay for use of same.
"HARDER & HAYNES.
"PETER ELLIS."

Plaintiff, by its agents, delivered a Plano binder at defendant's farm, and set it up, and put it in operation. Defendant used it in cutting about 95 acres of grain, and claims that it did not do good work, and did not give to him satisfaction; and, on July 27, 1885, he served written notice on Harder & Haynes, as follows:

"NILES, MICH., July 27, 1885.
" MESSRS. HARDER & HAYNES,—
" *Gentlemen:* The sample Plano binder that you let me have on trial does not do good work, and does not give satisfaction. I am not satisfied with it. It is at my place, where you left it, subject to your order; you can come and take it. I am willing to pay for the use of the same, and hereby offer so to do.
"Yours, etc.,          PETER ELLIS."

---

[1]Head-notes prepared by CHAMPLIN, J.

On the trial, testimony was offered to show how the machine worked. The defendant's counsel objected to its introduction, as being immaterial. The circuit judge overruled the objection, and admitted the testimony, saying:

"My opinion of the construction of this contract is this: That it is to be a satisfactory machine, not to him, but such as people knowing the quality of machines would be satisfied with; it is to do satisfactory work."

Under this ruling a large amount of testimony was received as to the working of the machine while in defendant's possession, and the circuit judge, construing the instrument in his charge to the jury, instructed them as follows:

"As I said in the outset, this word 'satisfaction' has no further significance than the fact that it should be a good machine, and do good, reasonable work, which would be satisfactory to intelligent, reasonable men using machinery."

"The question for you to determine is, was this machine capable, with proper management, of doing as good work as those that are called good, first-class machines, working through the country, under the same circumstances, and in the same kind of grain? Was it a good machine, and did it do good work under proper management and proper conditions; did it do that kind of work so it should have been satisfactory to a man of intelligence in relation to this kind of machines; did it do that? That is the question."

We are of opinion that the circuit court erred in the construction which he placed upon the contract. A cardinal axiom in the construction of a written contract is that all its parts must be examined, and effect given to every word and phrase, if practicable. *Vary v. Shea,* 36 Mich. 388; *Norris v. Showerman,* Walk. Ch. 206; 2 Doug. 16; *Paddack v. Pardee,* 1 Mich. 421; *Howell v. Richards;* 11 East, 643.

The object is to arrive at the intention of the parties; and this is to be deduced from the language employed by them to express their intention. If the language employed is not free from doubt or uncertainty, resort may be had to the condition of the respective parties, the subject-matter of the

contract, and the circumstances surrounding the transaction and connected with it, and everything except the contemporaneous and previous declarations of the parties, for the purpose of enabling the court to ascertain the intention of the parties. *Mills v. Spencer,* 3 Mich. 127, 136.

Applying the above principles of construction to the writing introduced as the basis of the plaintiff's claim, it is clear that the binder was not only to do good work, but it was to give satisfaction to defendant. Unless he was satisfied with the machine, although it did good work, he was not bound to purchase. The construction placed on the instrument by the circuit judge completely nullified the words "and give satisfaction." He construed them as synonymous with "to do satisfactory work, such as people knowing the quality of machines would be satisfied with;" or, to use his own language, "this word 'satisfaction' has no further significance than the fact that it should be a good machine, and do good, reasonable work, which would be satisfactory to intelligent, reasonable men using machinery."

This, certainly, is not the usual signification of the word, and there is nothing in the context or in the subject-matter which indicates that the word was used in any other than its ordinary meaning. The vendor had already agreed that the binder should "do good work," and, if the learned judge had defined that phrase in the same way he did the word "satisfaction," it would have been applicable and proper.

No one can read this writing, and give to the words their ordinary meaning, without understanding that something more was required than that the binder should do good work before defendant was obliged to keep and pay for the machine. He was not obliged to do so unless it also gave satisfaction to him. We may not take judicial notice of the fact, but we may well suppose, that there is a choice between machines for reaping and binding that do good work. It may be that a machine which will do good, satisfactory work in reaping

and binding may, at the same time, have more side-draught than another, or it may be so geared as to require much more power to propel it than another, or its machinery may be complicated, and so constructed as to easily get out of repair, or require great care and skill in operating it. All these things may not be impossible, or even improbable. How, then, can it be said that, although it does good work, nevertheless it may not fail to give satisfaction? Or why should it be said, when the bargainer has reserved the right to elect whether he be fully pleased or not, that he is bound to be pleased if another reasonable or intelligent man is pleased with the work of such machine?

There is another clause in the contract which has a bearing upon the question. It is stipulated that if the machine does not do good work, and give satisfaction, the said Ellis is to pay for the use of the same. It cannot be contended, with reason, that Ellis agreed to pay for the use of a machine that did not do good work. This clause implies that it may do good work, and yet not give satisfaction so that he would be willing to keep and pay for it. He agreed that if it did not do good work, and give satisfaction, he would pay for the use of the binder. He was entitled, under the agreement, to give the machine a thorough, practical trial; and then, if he was not satisfied with it, he was to pay for the use of it. This provision entitles the writing to a liberal construction in his favor. It shows that he had an option to accept or reject the binder, according as it gave him satisfaction or not.

A proper construction of the contract clearly brings it within the first class of such contracts referred to in *Wood Reaping, etc., Co. v. Smith*, 50 Mich. 565, 569 (15 N. W. Rep. 906), and is governed by the decision in that case.

The judgment must be reversed, and a new trial granted.

SHERWOOD, C. J., and MORSE, J., concurred. CAMPBELL, J., did not sit.