### SCHMAND v. JANDORF.

1. CONTRACTS—SATISFACTION CLAUSE.

Where parties contract for performance of work by one to the satisfaction of the other, reserving to the latter the sole right of determining the sufficiency of the performance, the declaration of his dissatisfaction is conclusive, and is not subject to review by the courts.[1]

2. MASTER AND SERVANT—CONTRACTS—DISCHARGE AS BREACH.

Where plaintiff obtained employment as defendant's candy-maker for one year, subject to the general control and to the satisfaction of the employer, who, having declared his dissatisfaction with plaintiff's performance of the contract, terminated the employment within a year, it was not competent to inquire into his motives or grounds of dissatisfaction, and a verdict for defendant was rightly directed on the trial.

Error to Kent; McDonald, J. Submitted January 27, 1913. (Docket No. 44.) Decided April 8, 1913.

[1] The question of the termination of contracts of employment which contain stipulations permitting rescission by the employer if the work is not satisfactorily performed is treated in notes in 12 L. R. A. (N. S.) 403, and 23 L. R. A. (N. S.) 1003. And as to the rights and remedies of servant discharged for good cause, see note in 5 L. R. A. (N. S.) 524.

Assumpsit in justice's court by Albert F. Schmand against Charles S. Jandorf for breach of a contract of employment. From a judgment for the plaintiff, defendant appealed to circuit court. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Colin P. Campbell,* for appellant.

*Benn M. Corwin,* for appellee.

STONE, J. This suit was begun in justice's court in the city of Grand Rapids. It was appealed to the circuit court, where, at the close of the plaintiff's testimony, a verdict was directed for the defendant. The plaintiff has brought the case here on writ of error. The sole error assigned is that the trial court erred in directing the jury as follows:

"Gentlemen of the jury, I am going to direct a verdict in this case. Plaintiff's right to recovery depends upon a contract that he made with the defendant, in which the defendant reserved the right to discharge the plaintiff at any time when he was dissatisfied. That is a question entirely for the defendant, as the courts have held; and so, under the contract, as I view the case, the only question in issue is: Was the plaintiff discharged because the defendant was dissatisfied? The plaintiff testifies that that was the reason assigned by the defendant at the time, and there is no testimony to the contrary."

Plaintiff was an expert candy maker. On or about June 5, 1911, he noticed in the Confectioner's Journal an advertisement inserted by defendant for a candy maker. Plaintiff was at that time residing at Springfield, Mass. He answered defendant's advertisement by letter, in which he stated, in substance, that he was willing to go to Grand Rapids on a week's trial, provided his transportation was paid, and if he was not satisfactory to defendant the latter was to pay plaintiff whatever he wanted to for that week,

and plaintiff would then pay his own transportation back. His wages, if he was hired, were to be $25 to $35 a week, according to the place. Defendant replied to this letter, saying that he was looking for a high-class man who could make a good line of satin finish goods, chocolates, and counter goods, take charge of a retail shop with two or three assistants, paying good wages and steady position. Plaintiff responded to this letter on June 19th, stating:

"There is no doubt of me not being able to make your goods, providing you have the tools and help, to your satisfaction; if I do say so myself, I am considered one of the quickest workers in the candy line."

As a result of this correspondence the defendant sent the plaintiff his transportation, and the latter came to Grand Rapids, and commenced work for defendant the Monday after the 4th of July. At the close of the first week, and after some discussion relating to wages, it was finally agreed that plaintiff should remain for $30 a week. There was some delay about a written contract, but finally defendant had one prepared, and it was signed November 9, 1911, by both parties. It related back to July 1st. In the meantime plaintiff had moved his family to Grand Rapids. The written contract was put in evidence, and was as follows:

"This agreement, made this 9th day of November, 1911, by and between Chas. S. Jandorf of the city of Grand Rapids, Kent county, Michigan, party of the first part, and A. F. Schmand, a candy maker, of the same place, party of the second part:
"1. The said party of the second part shall enter into the services of said Chas. S. Jandorf as a candy maker for him in his business of catering and confectionery for the period of one year from and after the first day of July, 1911, subject to the general control and to the satisfaction of said Chas. S. Jandorf.
"2. That the said candy maker shall devote the

whole of his time, attention and energies to the performance of his duties as such candy maker, and shall not, either directly or indirectly, alone or in partnership, be connected with or concerned in any other business, or pursuit, whatever, during the said term of one year.

"3. The said candy maker shall, subject to the control of and to the satisfaction of Chas. S. Jandorf, perform all of his duties as a candy maker, and shall serve said first party diligently and according to his best ability in all respects.

"4. The fixed salary of said candy maker shall be the sum of thirty ($30) dollars per week for each and every week of said year, payable by the said first party weekly, at the end of each week, or on the first day of the succeeding week.

"5. When the said candy maker has completed one year's services from July 1, 1911, he is to be entitled to two weeks' vacation with one week's pay.

"In witness whereof the parties to these presents have hereunto set their hands the day and year first above written.

"CHAS. S. JANDORF.
"A. F. SCHMAND."

Plaintiff continued to work under this contract until, in the month of January, 1912, he was discharged by the defendant. It appears by the testimony of the plaintiff that defendant found more or less fault with his work; that as early as July and August defendant complained that plaintiff made too many goods; that in December he complained that plaintiff made some chocolates too hard, and that he was giving his (defendant's) "specials" away.

Another witness offered on behalf of plaintiff testified that he heard defendant complain of the plaintiff's work at least on two occasions. The plaintiff's final testimony, on cross-examination, upon the subject of his discharge was as follows:

"I was sworn in justice's court. When Mr. Jandorf discharged me, he said that my work was not satisfactory to him. I did testify in justice's court that Jandorf said, 'I don't want you any more.'

"*Q.* Didn't you answer the question just exactly as I have read it? This is the question: 'When he got ready to discharge you, he told you that your work was not satisfactory,' to which you answered these three words: 'He did; correct.' Wasn't that your testimony in justice's court?

"*A.* I may have said that; yes. I don't say I didn't say that. I may have said it; yes. I may have said that. I said he did, and I says, 'That is correct.'

"*Q.* Then Mr. Jandorf did tell you that your work was not satisfactory?

"*A.* Well, I tell you, he may—

"*Q.* Just answer the question, please.

"*Plaintiff's Attorney:* Just a minute. He does not understand the question.

"*The Court:* He wants to know if, at the time he discharged you, he told you your work was not satisfactory?

"*A.* He told me, 'I don't want you any more,' and I asked why, and he says, 'Why, your work ain't satisfactory.' He had not complained to me several times before, and told me my work was not satisfactory."

Upon redirect examination he testified:

"That must have been between the 9th and 15th, somewhere around there. It was at the time I was let out; that was when he discharged me. I didn't know what I was getting discharged for."

It is the contention of the plaintiff that there was no evidence showing that defendant was, in good faith, dissatisfied with plaintiff, and that this was the reason for his discharge, and that the inferences to be drawn from the testimony were for the jury.

He further contends that the trial court should have construed the contract as requiring the plaintiff to perform his duties as a candy maker in good, efficient, and workmanlike manner, and should not have construed it as it was construed in the charge, as authorizing a discharge when defendant was dissatisfied, and was in error in further ruling that the question of dissatisfaction was entirely for the defendant.

On the other hand, the defendant claims that, under the contract in the case, the right of the defendant to discharge the plaintiff whenever his work was not satisfactory to the defendant is well settled in this State.

We think that the questions here presented can be determined under our own decisions, and that it will not be necessary to cite cases outside of this State, as contracts of this character have been frequently before our courts.

In the case of *Wood Reaping & Mowing Machine Co.* v. *Smith,* 50 Mich. 565 (15 N. W. 906, 45 Am. Rep. 57), decided in 1883, which involved the sale of a machine where there was a warranty by the vendor, and a stipulation exacted by the purchaser that the contract should be of no effect, unless the machine worked to his satisfaction, Chief Justice GRAVES, speaking for this court, made the following concise statement of the rules of construction which should be applied in such cases, as follows:

"The cases where the parties provide that the promisor is to be satisfied, or to that effect, are of two classes; and whether the particular case at any time falls within the one or the other must depend on the special circumstances and the question must be one of construction.

"In the one class the right of decision is completely reserved to the promisor and without being liable to disclose reasons or account for his course, and a right to inquire into the grounds of his action and overhaul his determination is absolutely excluded from the promisee and from all tribunals. It is sufficient for the result that he willed it. The law regards the parties as competent to contract in that manner, and if the facts are sufficient to show that they did so, their stipulation is the law of the case. The promisee is excluded from setting up any claim for remuneration, and is likewise debarred from questioning the grounds of decision on the part of the promisor, or the fitness or propriety of the decision itself. The cases of this class are generally such as involve the

feelings, taste, or sensibility of the promisor, and not those gross considerations of operative fitness or mechanical utility which are capable of being seen and appreciated by others. But this is not always so. It sometimes happens that the right is fully reserved where it is the chief ground, if not the only one, that the party is determined to preserve an unqualified option, and is not willing to leave his freedom of choice exposed to any contention or subject to any contingency. He is resolved to permit no right in any one else to judge for him, or to pass on the wisdom or unwisdom, the justice or injustice, of his action. Such is his will. He will not enter into any bargain, except upon the condition of reserving the power to do what others might regard as unreasonable. The following cases sufficiently illustrate the instances of the first class: *Gibson* v. *Cranage,* 39 Mich. 49 [33 Am. Rep. 351] ; *Taylor* v. *Brewer,* 1 M. & S. 290; *McCarren* v. *McNulty,* 7 Gray [Mass.], 139; *Brown* v. *Foster,* 113 Mass. 136 [18 Am. Rep. 463] ; *Zaleski* v. *Clark,* 44 Conn. 218 [26 Am. Rep. 446] ; *Rossiter* v. *Cooper,* 23 Vt. 522; *Hart* v. *Hart,* 22 Barb. [N. Y.] 606; *Tyler* v. *Ames,* 6 Lans. [N. Y.] 280.

"In the other class the promisor is supposed to undertake that he will act reasonably and fairly, and found his determination on grounds which are just and sensible, and from thence springs a necessary implication that his decision in point of correctness and the adequacy of the grounds of it are open considerations and subject to the judgment of judicial triers. Among the cases applicable to this class are *Daggett* v. *Johnson,* 49 Vt. 345, and *Hartford Sorghum Manfg. Co.* v. *Brush,* 43 Vt. 528.

"To which of these classes does this case belong? The answer is not difficult. The facts are very distinct. The plaintiff's own evidence is cogent that the defendant was extremely shy, and would enter into no arrangement, except upon the terms of doing as he liked about keeping the machine after testing it. His mind was fixed immovably that no chance should be left to force the article upon him, unless he finally chose to take it; and the special stipulation was specifically drawn and executed to meet this purpose and thereby induce the defendant to concur in an ar-

rangement. Had it been the intention that he should be liable in case the performance of the machine were such, in the opinion of a jury, as to deserve his approval, it would have been quite unnecessary to get up the special writing. The original printed warranty would have answered the purpose. The transaction was one belonging to the first class, and the circuit judge was mistaken in deeming it otherwise."

The above case has been followed by many others, and the doctrine therein stated and recognized. *Koehler* v. *Buhl*, 94 Mich. 496, 500 (54 N. W. 157).

In the case last cited Chief Justice HOOKER said:

"It is settled law that, where a person contracts to do work to the satisfaction of his employer, the employer is the judge, and the question of the reasonableness of his judgment is not a question for the jury."

The last-mentioned case is followed and approved in *Sax* v. *Railway Co.*, 125 Mich. 252 (84 N. W. 314, 84 Am. St. Rep. 572). On page 256 of 125 Mich. (84 N. W. 316, 84 Am. St. Rep. 572), in the opinion, this court said:

"Under the contract alleged and proved, the defendant had the right to terminate the employment whenever the plaintiff did not perform his duties to the entire satisfaction of the defendant. Under the rule as settled in this State, the reasons for, or justice of, the defendant's satisfaction cannot be inquired into" —citing many cases in this and other States.

See, also, *Pierce* v. *Cooley*, 56 Mich. 552 (23 N. W. 310); *Plano Manfg. Co.* v. *Ellis*, 68 Mich. 101, 102 (35 N. W. 841).

In the case last mentioned the written contract relied upon read as follows:

"We hereby agree to let Peter Ellis have the sample Plano binder, 1885, at the same price that Mr. Rheam has his for, and the binder is to do good work and give satisfaction; and, if not, the said Ellis is to pay for use of same."

It was held that the agreement that the binder was to do good work and give satisfaction embraced independent conditions, and unless the binder gave satisfaction to Mr. Ellis, as well as doing good work, he was not obliged to keep and pay for the machine. The same rule is applied and the same cases followed in *Platt* v. *Broderick*, 70 Mich. 577-580 (38 N. W. 579).

In the recent case of *Isbell* v. *Carriage Co.*, 170 Mich. 304 (136 N. W. 457), Justice STEERE very clearly points out the distinction between the two classes of cases in the following language:

"In many cases of this nature which have been before various tribunals, there is recognized two quite well-defined classes—one where the personal taste, feelings, sensibility, fancy, or individual judgment of the party to be satisfied are especially involved; the other where mechanical utility or operative fitness in relation to which some standard is available are bargained for. In the former class the authorities preclude disputing the propriety or reasonableness of the declaration of dissatisfaction on the part of the individual entitled to exercise it. It is said to be with him purely a personal matter of which he is made the sole judge. It being his right to say whether he is satisfied or not, it cannot be left to another to say that he ought to be satisfied. In the latter class of cases the authorities are more conflicting."

This is the same distinction that was pointed out by Chief Justice GRAVES in the case first above cited.

We do not hesitate to say that the contract in the instant case falls within the first class mentioned. Here the contract contained independent provisions. It is clear and explicit in its terms. Had it been the intention that the contract should continue, in case plaintiff should "perform all of his duties as a candy maker and shall serve said first party diligently and according to his best ability in all respects," it would have been quite unnecessary to have added the clause as to the satisfaction of the defendant, and it would then have been a question for a jury whether plain-

tiff had performed his contract or not. To give the "satisfaction" clause any force, it must refer to the mental condition of the defendant, and not to the mental condition of a court or jury. We think that the construction of the contract by the circuit judge was the correct one. Whatever of apparent hardship there may be in such a contract, it was one of the parties' own making. As was said by Justice STEERE in the *Isbell Case:*

"If parties voluntarily assume the obligations and hazards of a satisfaction contract, their legal rights are to be determined and adjudicated according to its provisions. It is elementary that courts cannot make contracts for parties, nor relieve them of the consequences of their contracts, however ill-advised."

In this case there is no claim that the parties did not fully understand the terms of the contract, and in fact it was made in pursuance of the correspondence leading up to it.

The claim of the plaintiff that the defendant did not find fault with his work, and that there is no evidence of defendant's dissatisfaction, is not supported by the record; the testimony of the plaintiff and his witnesses (in the aspect most favorable to the plaintiff) showing the contrary.

The defendant not only found fault with the plaintiff's work, but the record would warrant us in saying that he had reasonable cause to be dissatisfied— a point, however, which it is not necessary for us to pass upon.

Finding no error in the record, the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.