## SHEPHERD v. UNION CENTRAL LIFE INS. CO.
### No. 7345.

Circuit Court of Appeals, Fifth Circuit.
Dec. 12, 1934.

John H. Crooker, and Carl G. Stearns, both of Houston, Tex., for appellant.

David T. Searls and Fred R. Switzer, both of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

E. D. Shepherd, Sr., sued the Union Central Life Insurance Company for a breach of contract in that the company terminated in February, 1933, his contract as its general agent for a large territory in Texas which was by its terms to run till June, 1939. The company pleaded in justification a provision of the contract reading: "This contract may be terminated on thirty days notice in writing, except as provided in Article 7, at the option of the party of the second part (Shepherd); or at the election of the party of the first part (the Company) if the party of the second part shall fail to perform any of his agreements as herein expressed, or shall fail to conduct the business, or secure an amount of insurance, satisfactory to the Company," alleging that it was dissatisfied at his conduct of the business and at the amount of insurance he was securing. The court on hearing the evidence directed the jury to find a verdict for the company, and Shepherd appeals, contending that the quoted provision of the contract should be construed so as to require reasonable grounds for dissatisfaction and that none were shown; or if actual dissatisfaction though unreasonable be sufficient, that the jury might have found that it was not real but was pretended for an ulterior end.

The contract is lengthy. It appoints Shepherd as the company's general agent for ten years from June 13, 1929, unless previously terminated, to organize the territory assigned, to procure applications for life insurance, deliver policies, collect premiums and perform other duties, in twenty-eight counties of Texas; but the right is reserved to establish other agencies therein, or to withdraw such portions of the territory as Shepherd "fails to organize and operate to the satisfaction of the said party of the first part." The compensation is to be wholly by commissions on first premiums and on renewal premiums to the number of nine. The right to the commission on renewal premiums is to survive a termination of the

contract (article 7), but otherwise it is terminable as provided in the clause above set out. No right under the contract is assignable except with the company's written consent. This contract was the fourth of the sort made with Shepherd, who had had this territory for twenty-five years when this one was signed, and had been highly successful up to that time. Very clearly the company did not thereby bind itself absolutely for ten years but reserved the right to withdraw any of the territory which was not organized or operated to its satisfaction or to terminate the whole relation, except as to commissions on renewals, if Shepherd should fail to keep any of his express agreements, or should fail to conduct the business in a manner, or to secure an amount of insurance, satisfactory to the company. The express agreements are not in question. The contract was terminated only because the company professed a dissatisfaction with Shepherd's conduct of the agency and with the amount of insurance produced in 1931 and 1932.

The first question is whether Shepherd can contend that there was no reasonable cause for dissatisfaction, thus making the court the judge of the sufficiency of his performance, or is the company's conclusion final? Contracts in which one party makes satisfaction on the other's part a condition of success in performance have been frequently before the courts. Thus where there is a sale in which the article sold is to satisfy the buyer after examination or trial, there is only a sale on approval. No great loss results to the seller if the article is returned to him, and the courts have never hesitated to enforce the contract literally. When a thing is to be specially made for another and particularly when labor and material are to be expended on another's property to that other's satisfaction, the injustice done by a captious rejection or by the unremunerated retention of the improvement upon a profession of dissatisfaction has led courts to a greater caution. If the contract aims at a definite mechanical or financial or other result, or at operative fitness, of which other persons can judge as well as the contractee, and especially if the tests of performance are fully set out in the contract so as to be certainly applied, the leaning is to hold in spite of a stipulation for satisfaction that performance is successful if it attains the intended result and fulfills the contractual tests, and dissatisfaction professed notwithstanding is treated as un-

real or fraudulent. If, however, the contractee has stipulated for a satisfaction of his own fancy, taste, sensibility, or judgment in a matter involving such things, he is entitled to be satisfied, and the fancy or taste or judgment of others cannot be substituted. 13 C. J. 675. We apprehend that in all cases parties have the right to contract as they see fit on this point and are to be held to their contract whether judicious or rash, so long as the discontented party acts in good faith and is really dissatisfied. When the thing or the service contracted for is one as to which satisfaction as a mental state would naturally be desired and insisted on, as in a contract for a portrait, a suit of clothes, personal services, a business association, or the like, it is not improbable that such satisfaction, to be judged of alone by the person to to be satisfied, is really intended by both parties and dissatisfaction, though good reasons be not given, may easily be real. But if a fixed result is aimed at and tests are set up which are fulfilled, it is much less likely that a reference to satisfaction is intended literally, especially when the results would be hard and unjust, and in such circumstances a professed dissatisfaction without any good reason seems necessarily unreal and pretended. In the light of these principles we have no hesitation in holding this contract to stipulate literally for a continuing satisfaction on the company's part with the operation of the agency and its results. The express agreements about keeping records, making accountings, and the physical handling of the business, which are not here in question do not exhaust the field. A very important part of the company's business was placed for development and management into Shepherd's hands, and whether as circumstances changed his methods were wise, his efforts sufficient and the results what they should be were questions of most refined business judgment. Not only are the immediate results to be considered, but the substantialness of the foundations for future business, the progress of the good will of the company in the territory, a well-trained and satisfied soliciting personnel, and many other things could enter into the judgment. A most confidential relationship was set up, a business association somewhat suggesting the relationship of partners. It can be readily understood that assignment of the contract should be prohibited, that Shepherd should stipulate for a release on 30 days notice without any reason on his part,

and that the company should stipulate for a termination of it if dissatisfied with the operations or results, without having to convince either Shepherd or a jury that it ought to be dissatisfied. We may well suppose that a ten year contract would never have been signed by either party without such stipulations for its termination. Under them, if the company was really dissatisfied, it had the right to end the relationship, whether its dissatisfaction seemed reasonable to Shepherd or not. The hardship of depriving Shepherd of the business which he had built up is stressed, but it may be observed that it was not built up under this contract but under others which have run their course. The business was at its peak when this contract was made and has since declined. Shepherd is not by termination of the contract deprived of his interest in what had been done, for he gets his commissions on renewals notwithstanding. Only his employment ceases. We are unable to distinguish this case from American Music Stores v. Kussell (C. C. A.) 232 F. 306, L. R. A. 1916F, 882, where the contract terminated was one employing Kussell for two years to organize, supervise, and operate music stores and music departments in the United States and Canada, he agreeing to perform the services required of him to the satisfaction of the employer. Parlin & Orendorff Co. v. City of Greenville (C. C. A.) 127 F. 55, 57, dealt with a garbage plant which was to do certain work and stand certain tests which it fulfilled, but it was alleged that the committee of the city council without just cause or reason and moved by caprice and prejudice had refused to express satisfaction under a clause of the contract which provided for payment "when completed, and tested, according to the satisfaction of the committee * * * in accordance with this contract." The court held on demurrer that a plant of the sort contracted for and doing its work was the real object of the contract rather than the satisfaction of the committee. Campbell Printing Press Co. v. Thorp (C. C.) 36 F. 414, 1 L. R. A. 645, also dealt with machinery, but the guaranty of satisfaction was taken at face value. So in Silsby Mfg. Co. v. Town of Chico (C. C.) 24 F. 893. More in point are the numerous cases in state courts relating to business employments, where almost without exception a stipulation for satisfaction by the employer has been held to make a real dissatisfaction the end of the matter, though unreasonable and unjustified by any specific default.

An example from Texas, where the contract now in question was to be performed, is Watkins v. Thurman & Napier, 44 Tex. Civ. App. 432, 98 S. W. 904. See, also, Bishop v. Bloomington Canning Co., 307 Ill. 179, 138 N. E. 597; Blaine v. Publishers George Knapp & Co., 140 Mo. 241, 41 S. W. 787; Butsch v. Emerson-Brantingham Implement Co., 197 Mo. App. 387, 196 S. W. 1024; Tiffany v. Pacific Sewer Pipe Co., 180 Cal. 700, 182 P. 428, 6 A. L. R. 1493; Schmand v. Jandorf, 175 Mich. 88, 140 N. W. 996, 44 L. R. A. (N. S.) 680, Ann. Cas. 1915A, 746; Mackenzie v. Minis, 132 Ga. 323, 63 S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723.

■ On the question whether the company's dissatisfaction was real only an affirmative verdict could rightly have been rendered. In 1925 Shepherd had had trouble with his soliciting organization. In the fall of 1931 it again became acute. Each of his numerous soliciting agents except one signed a written complaint asserting that the agency was demoralized, that no one wanted to leave it, but all save two would be forced to if an understanding could not be reached. Lack of firmness was charged to Shepherd, that personal matters were not kept confidential by him, promises were forgotten, contracts given agents of low quality in some instances, resignations had been requested and cancellation of contracts threatened, the agents were in financial straits and their morale broken. In January, 1932, the agency was investigated by the company, and Shepherd was summoned to the home office for a conference, the letter saying of the agency's business: "The total has dropped from $3,080,000 in 1929 to $2,666,000 in 1930 and $1,633,000 in 1931. The prospects of improvement in this latter figure are not bright as the January settled business amounted to only $41,000, and during the current month when all agencies are giving us their best the applications amount to only $43,000. * * * The situation is not only one which gives me some concern, but it appears to me to be critical and demanding some solution." In the conference had a goal was set for 1932 by which a certain number of new agents having certain productive capacities were to be obtained, and $1,000,000 new business was to be secured through them and $1,500,000 through the old organization. During the year the agency was twice revisited and there was disappointment at the number and capacity of the new agents and at the instruction they

were getting, and at the business secured. Toward the end of the year the company officials after conference with one another decided that a new agent should be secured and approached Wm. R. Harrison, then located at Atlanta and in the service of another insurance company. He at first declined to take the agency, but later accepted, and on February 4, 1933, Shepherd was notified by a letter in which these expressions occur: "The year has now passed and after careful consideration we have decided that it will be best for all concerned to proceed with the reorganization of the agency under a new management on March 1st. Therefore, I give you this formal notice of the termination of your contract on that date. Naturally in view of our long association together er I should not like to canvass the details of this matter by correspondence and therefore I wonder if you could come to Cincinnati at our expense for a conference. * * * Our relations have been close and over many years and I should have no little hesitation in carrying through this move if I did not only believe it to be one necessary in the Company's interest but also most particularly in your own personal interest." In the conference that followed Shepherd was offered a special solicitor's contract at an enlarged commission, but he declined and took service under another company. While Shepherd did not nearly reach the goal set for 1932, he did make a showing which in view of the general business depression prevailing might reasonably have seemed creditable, and especially in January and February, 1933, the business done showed improvement. Nevertheless it is apparent that there were grave deficiencies in his management which had twice caused a crisis, and at which the company had been long and seriously dissatisfied. No other cause for the change of agents appears. There was no personal hostility to Shepherd—the whole case breathes that. There was no favoritism to his successor, for he was not connected with the company and not chosen till the dissatisfaction had been acute for a year. There was not profit to the company in the change, for the successor has practically the same sort of contract that Shepherd had, and where it differs, it has so far been to the detriment of the company. A jury would not have been authorized to disbelieve the officials who testified to a real dissatisfaction and the court did not err in directing a verdict for the defendant.

Affirmed.