## CULLUM v. FORD MOTOR CO.

### No. 9165.

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1939.

Rehearing Denied Jan. 15, 1940.

Glover Johnson, of Fort Worth, Tex., for appellant.

Gabe P. Allen, of Dallas, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

After the termination of a sales contract, between appellee and appellant, appellee brought this suit to enjoin appellant from continuing to use "Ford" signs, and for an accounting. Appellant, answering that he had ceased using the signs, and with a claim over for an accounting against appellee, the injunction feature passed out of the case, and it went to issue and was disposed of solely on the accounting. Referred to a Master for advisory findings and recommendations, there was an accounting before him on a stipulation as to practically all of the material facts, with resulting findings and recommendation that defendant have judgment for $9.05. Appealing from the judgment entered on these findings, appellant is here complaining of the rejection by Master and Judge, of two items in his account; (1) Item No. 8, for $1,592.82, refund on account of excise tax; and (2) Item No. 13, before the Master, stated as $31,808.30, and by the amended pleadings before the District Judge and here, alternatively stated at $26,242.60 and $13,858.60, reimbursement of claimed overcharges for freight and other handling expense.

The provisions of the sales agreement material to these controverted items are set out below in the margin.[1] It was stipulated that items of excise tax shown on the

[1] Clause 1—"Selling Rights"—"Company agrees to sell and Dealer agrees to purchase for resale for use within the boundaries of the United States of America, Ford automobiles, etc., * * * upon the terms, conditions and provisions hereinafter specifically set forth."

Clause 2—"Prices and Terms"—"Company will sell its products to Dealer, f. o. b. Detroit Michigan, at such net list price or at such discounts from published list prices as will, from time to time, be fixed by the Company."

Clause 3—"Freight and Packing"—"In addition to the payments hereinabove specified. Dealer shall pay Company such amount as Company shall from time to time determine for freight, crating, boxing, packing, double-decking, loading, delivering, and other handling expense. On rail or boat shipments, Dealer shall be credited against the amount so fixed in a sum equal to any freight actually paid by Dealer."

Clause 4—"Taxes"—"In addition to the specified purchase price, Dealer shall pay a sum equivalent to any tax imposed by any law of the United States or of any of the States upon the manufacture or sale of any article sold under this agreement."

invoices from the Ford Motor Company to Cullum during the years 1934 and 1935, were to reimburse Ford Motor Company for excise tax paid, and that the Government has not refunded Ford Motor Company any of such taxes so paid. It was further stipulated that the records of the company are not compiled to show actual or exact information covering; assembling of cars at the Dallas Branch for transportation from Dearborn to Dallas on each kind or class of Ford car and truck, or on parts thereof; cost of crating, boxing, loading, delivery and other handling expense. Other provisions of the stipulation were:

That the estimated average transportation cost and assembly of an average Ford unit based upon ideal conditions which seldom exist is, as follows:

| | |
|---|---|
| Assembly cost per unit............ | $24.14 |
| Estimated freight cost of knocked down parts per unit............. | 34.05 |
| Expense of handling (not including crating) ................... | 2.43 |
| Other assembly and handling expense (including crating and uncrating) per unit............... | 11.70 |
| Stock handling and shipping expense ...................... | 1.07 |
| All other expense per unit (including branch overhead, supervision, etc.) ................... | 18.30 |
| Convoy truck-away charge to Ft. Worth ...................... | 4.62 |
| Total ...................... | $96.32 |

That specimen freight and handling charges on different individual shipments from Dearborn to Ft. Worth and Dallas, had amounted to respectively $90 and $88.80; that the Ford Company does not deliver cars by convoy from Dearborn, but that cars could have been transported by independent motor convoy service at a charge of $70.

The Master found that the $1,592.82 excise tax, of the payment of which appellant complains, was paid by the company on an amount equivalent to the first class freight rate from Dearborn, and that if the company had assembled the cars at Dearborn and shipped them by rail to Cullum, instead of shipping the parts to Dallas, assembling the cars and making delivery there, it would not have had to pay this tax. There was no evidence that appellee, at any time during the existence of the contract, objected to, or protested, the manner of assembly of, or delivering the cars, or any of the charges made against him on account of the delivered cars. From the record, it appears that it was only after the sales agreement had ended, and this litigation arose, that the claims now made by appellee, were advanced.

It was the Master's view, and the District Judge concurred, that absent bad faith or fraud, and these were found not to exist, the company was authorized under the sales contract to determine the amounts which the dealer should pay the company "for freight, crating, boxing, packing, double-decking, loading, delivering and other handling expenses", and appellant was obligated to pay such amounts so determined, and any excise, or other taxes or fees, which might be imposed on the products sold or business done by the company under its contract with appellee; that the amounts charged for freight, etc., had been fairly and in good faith determined; and the excise taxes had been actually incurred and paid. Appellant is here insisting that since the contract provided. for the delivery of the cars to him at Dearborn, the company was without authority to charge him with excise taxes or with cost for freight, handling, etc., in excess of those he would have had to pay, had the delivery been made there. He points to the finding of the Master, that to the extent of the sums of which he complains, no excise tax would have been imposed, if delivery had occurred at Dearborn. He points too, to the stipulation, that the cars could have been convoyed at a transportation cost of $70.00 per car, and complains, as improperly charged against him, of some of the items shown above, as estimated average transportation cost and assembly.

So pointing and complaining, appellant urges upon us; that the sums charged to him for excise taxes, were excessive in the amount complained of; and the amounts the company determined that he should pay for freighting, crating, etc., were excessive to the extent of these items stipulated as part of the average cost of transportation, assembly and delivery; assembly cost per unit—$24.14; other expenses per unit—$18.30; stock handling and shipping expense—$1.07; total—$43.51 per car.

Appellant makes too, the alternative contention that if mistaken in his claim, that of the stipulated estimated costs, he

can be charged only with estimated freight, $34.05, expense of handling $2.43, other assembling and handling expense, including crating and uncrating, $11.70 or a total of $52.80, he could at most have been charged with $70, the stipulated cost of independent convoy transportation.

Appellee, on its part, pointing, as to the excise claim; to the contract provision, that the dealer shall pay any excise tax imposed on products or business of the company, on account of its dealings with appellant; to the stipulation that excise taxes to the amount charged were paid by appellee; to the undisputed fact that, delivery from and through the Dallas Assembly was accepted by appellant, and that he did not at any time, during the life of the contract, protest either the manner or method of delivery, or the charges for excise tax made from time to time; defends the finding and judgment as unassailable.

As to the $90 per car charged for transportation and etc., appellee, pointing; to the clear and unambiguous provision of the contract, that the company shall from time to time, determine the amount to be charged therefor; to the finding that its determinations were made reasonably and in good faith; and to the fact that appellant throughout the life of the contract, acquiesced in and accepted, both the manner of delivery and the amounts from time to time determined as proper charges against him, on account of deliveries, invokes the rule [2] that contracts of this kind are valid, and insists that no other finding than the one made below was justified on the record.

■ We agree with appellee on both points. By the contract Cullum agreed to pay excise taxes imposed upon and paid by "Ford". It is stipulated that the excise taxes of which he complains, were so imposed and paid, and it appears from the record and finding that, as paid, they were charged to Cullum, appeared in his statements, and in settlements with him were taken account of and allowed. The complaint now made by Cullum, is, that he should not pay these taxes because, the cars instead of being delivered to him at Dearborn as cars, were shipped in parts, to be assembled and delivered at and from Dallas. It is too late for Cullum to complain now of, and obtain relief from, the payment of an excise tax, which his acquiescence in the departure from the delivery term of the contract was as much a factor in accruing, as the Company's actions in making delivery that way. The contract did indeed, on its face, provide for delivery at Dearborn, but its provision for the Company's determining from time to time, transportation and handling costs, and the action of the parties under it in effecting delivery through the Dallas assembly plant, makes it perfectly clear that both parties understood that Dearborn was named merely as a cost basing point, and that actual delivery was to be made at and through Dallas. But, if it be considered that the contract as originally drawn, contemplated actual delivery at Dearborn, nothing in it forbade delivery elsewhere, and the parties to it could and did, by mutual agreement, deliver and accept delivery elsewhere. In order for Cullum to obtain relief under the contract from paying excise taxes which were imposed on the Ford Company on account of business done with him, he would have to show that the tax was either not legally imposed on "Ford", or if legally imposed, was not correctly charged to him, because "Ford" had over his protest, compelled him to take delivery through the Dallas assembly plant, instead of at Dearborn, as provided in the contract. The record makes it clear, not only that no such condition existed, but that appellant does not claim that it did. His claim, that he paid excessive excise taxes, is therefore, rejected.

■ Nor does he stand any better on his claim, that excessive freight, handling, and delivery charges were determined against him. Under the contract, appellee was directly authorized to determine, from time to time, charges for these items to be added to the price Cullum was to pay the company for its cars. The stipulation and the findings show that the amounts charged to appellant were based upon first class railway freight rates from Dearborn to Dallas & Ft. Worth, plus $6 per car for handling, and that this amount so charged, was less than the estimated actual cost incurred by appellee, on account of these items.

The evidence and the findings show that appellant, at no time, during the term of the contract objected to or protested, the manner of the delivery and the charges made on account thereof. It must be con-

[2] Tennant v. Fawcett, 94 Tex. 111, 58 S.W. 824; Butler v. Winona Mill Co., 28 Minn. 205, 9 N.W. 697, 41 Am.Rep. 277; United States Potash Co. v. McNutt, 10 Cir., 70 F.2d 126.

948

ceded that the contract giving appellee the right to fix and determine, the amounts to be charged, on account of items of freight, etc., was valid, and that the amounts so determined by it, must be paid by appellant, absent a showing of fraud or bad faith. Authorities cited, supra. Cf. Shepherd v. Union Central Life Insurance Company, 5 Cir., 74 F.2d 180.

■ Nothing in the record impeaches appellee's good faith in the matter. The transaction extended over a period of years during which the parties to the contract, handled it to their apparent mutual satisfaction, and without conflict or dispute. Appellee, in undertaking, at the termination of the contract, to undo what had been done, unsettle what had been settled and accepted, through the years of its performance, had a heavy burden upon him, to show either intentional bad faith and overreaching, or that the charges were so excessive, unjust and unreasonable, as to be inconsistent with good, indicative of bad, faith.

The Master and the District Judge, quite correctly, have found that he failed to sustain this burden. We find no error in the judgment. It is affirmed.

Affirmed.