**Fannie KOFFMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 2207.**

United States District Court
E. D. Michigan, N. D.
March 14, 1961.

Smith, Brooker & Harvey, Bay City, Mich., for plaintiff.

George E. Woods, U. S. Atty., Detroit, Mich., for the United States.

PICARD, District Judge.

This is a suit to recover income taxes and interest paid by the plaintiff taxpayer. $23,939.16 was paid to the Director of Internal Revenue Service under protest for deficiency assessments for the calendar years 1955 and 1956.

In 1946, plaintiff taxpayer received by testamentary disposition a life estate in her deceased husband's property under paragraph Second of the Last Will and Testament of Elmer Koffman, the terms of which are as follows:

"Second. To my beloved wife, Fannie Koffman, I give, devise and bequeath a life estate in and to all of the rest, residue and remainder of my property, real, personal or mixed and wherever situated together with

the right to use so much thereof, either of the corpus or the income or both, as may be required by her for her personal support and maintenance, *the reasonableness thereof to be determined by her*. The remainder of said estate at her death and accumulations thereto made during her lifetime, *if any there be*, I give, devise and bequeath to my son, Herman Koffman and my daughter, Mary Koffman Adelmann, share and share alike." (Emphasis ours.)

After further providing for remainders over in case of death of his wife or his children, the testator provided that:

"Sixth. Since my estate consists largely of my partnership interest in the Bay City Milling & Grocer Company and other similar partnership interests in the city of Bay City, Bay County, Michigan, it is my wish that said business be continued after my death until such time as orderly liquidation or readjustment thereof be affected, and accordingly I have entered into agreements with my partner, Eleck Blumenau, to that end. I direct that my executor carry on my partnership businesses in accordance with said agreement."

During the tax years in question, plaintiff taxpayer actually received the following distributions from her husband's estate: year 1955, $18,964.34; year 1956, $18,187.30. Both of these sums were *less* than net distributable income available during those years. The net income attributable to the decedent's businesses for the years 1955 and 1956, was $35,582.04 and $38,793.05, respectively. The Commissioner of Internal Revenue Service assessed deficiencies for those years on the theory that all the distributable income from the estate was taxable to the plaintiff. As mentioned above, plaintiff made the deficiency payments under protest. Her claims for refund have been disallowed.

### Conclusions of Law

■ Construing the language of the above quoted paragraph Second, plaintiff, Fannie Koffman, simply received a life estate in *all* her deceased husband's estate *together with the right* to do as as she saw fit with the corpus or income or both. Therefore, any income accruing to this life interest "belonged" to plaintiff and was taxable to her.

■ I am convinced that a trust was *not* intended, *nor* one created in fact. The instrument did not provide for separation of any legal or equitable titles to the property. The executor here did not hold the legal title to the property. There was no trustee. The executor was merely given limited managerial rights for a specific period (which period in truth, had expired under the partnership arrangement apparently.) But even liberally viewing the over-all language of the instrument's provisions as trust provisions, the plaintiff would still have sufficient power over the property as a beneficiary to be considered the owner of all the distributable income for tax purposes. Section 678, 1954 Internal Revenue Code, 26 U.S.C.A. § 678, deals with such situations. It provides in pertinent part:

"(a) General rule—A person other than the grantor shall be treated as the owner of any portion of a trust with respect to which: (1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself * * * *"

In the instant case, plaintiff was solely able to determine what would actually be distributed to her from the available income, but fact remains that *all* such property was *distributable* to her. The amount that she would consider reasonable was her business and hers alone. There was no one with the available right to check her discretion in this matter.

See Emery v. Commissioner of Internal Revenue, 1 Cir., 156 F.2d 728, 730—quoting from Corliss v. Bowers, 281 U.S. 376, at page 378, 50 S.Ct. 336, at page 337, 74 L.Ed. 916:

"The income that is subject to a man's unfettered command and that

948

he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."

The Emery case likened the principles and logic of the Corliss case where it was the settlor of the trust who had broad powers to a situation where a beneficiary receives and retains such powers (as could be said here about plaintiff beneficiary's powers.) The fact that plaintiff beneficiary did not exercise these powers in her own favor during taxable years does not make the income any less taxable to her. It is not necessary to collect income which is attributable to person for purposes of income taxation. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154. A beneficiary is not taxed on what he receives, but his share of the "distributable net income." See Sections 652(a) and 662(a), Internal Revenue Code of 1954, 26 U.S.C.A. §§ 652 (a), 662(a). Plaintiff in this case was entitled to the whole share.

While we were impressed by plaintiff's theory that the widow beneficiary would be bound by "reasonableness" in the amount she needed for expenses and costs of living, nevertheless the words

"the reasonableness thereof to be determined by her"

made an impression upon this court and we sought to learn how those words or words of similar import had been interpreted by the Federal Court and the Supreme Court of the State of Michigan. In this connection we found that when the contract provides that something be done "to the satisfaction" of the purchasing party the courts have held time and time again that while the product or work might be satisfactory to everybody else, and the refusal of the purchasing party to accept the work or the product might even be very frivolous, yet if not done "to his satisfaction" he or she was not obliged to accept or pay for it. Silsby Mfg. Co. v. Town of Chico, C.C., 24 F. 893, 894; Patterson v. Alabama Vermiculite Corp., D.C., 149 F.Supp. 548. Michigan takes a very serious view of

this provision. Wood Machine Co. v. Smith, 50 Mich. 565, 15 N.W. 906; Schmand v. Jandorf, 175 Mich. 88, 140 N.W. 996, 44 L.R.A.,N.S., 680; Graham v. City of Grand Rapids, 141 Mich. 612, 104 N.W. 983; Plano Manuf'g Co. v. Ellis, 68 Mich. 101, 35 N.W. 841; Gibson v. Cranage, 39 Mich. 49, 50.

In the case at bar the last word was given to the widow to decide how much she wanted. Some of her expenses might be frivolous; might be considered absolute waste by some but it was up to her to decide and because of that power placed in her we believe puts an entirely different aspect upon the taxing power of the United States.

Plaintiff should *not* be allowed to recover income taxes and interest paid for the years 1955 and 1956.